UTAH OPTICAL COMPANY, PLAINTIFF AND RE-
SPONDENT *v.* DAVID KEITH AND JAMES IVERS,
DEFENDANTS AND APPELLANTS.

LEASE—ESSENTIAL REQUISITE—LESSEE MUST EXIST—STATUTE OF
FRAUDS — PAROLE LEASE — DESTRUCTION OF SUBJECT-MATTER—
LEASE ENDED — INSTRUCTION TO JURY — TENANCY AT WILL —
WHEN ARISES BY IMPLICATION — TENANCY AT WILL—MEASURE
OF DAMAGES FOR EVICTION — AVOIDING ONEROUS EXPENDITURE
—NO JUSTIFICATION FOR INJURY TO PLAINTIFF—INSTRUCTIONS
NOT IN BILL OF EXCEPTIONS—PART OF JUDGMENT ROLE UNDER
R. S. 3151—PROPERLY REVIEWABLE.

*Lease—Essential Requisite—Lessee Must Exist.*

One of the essential requisites of a lease is the existence of
some one capable of taking and holding as lessee; and the
plaintiff corporation not being in existence at the time it is
claimed the lease was made, no lease could have been made
to it.

*Statute of Frauds—Parol Lease.*

A lease by parol for two years is void under the statute of frauds
of this State and of no force or effect whatever.

*Destruction of Subject-Matter—Lease Ended—Instruction to Jury.*

When the subject-matter of an alleged lease is destroyed, the
estate of both lessor and lessee ends, the relation of landlord
and tenant can no longer survive, and an instruction which
in effect informed the jury that the leasehold estate of plain-
tiff continued after destruction of the subject-matter of the
lease, was erroneous.

*Tenancy at Will—When Arises by Implication.*

Wherever there is an ownership of land on the one hand and
an occupation by permission on the other, a tenancy at will
arises by implication from the voluntary acts of the parties.

*Tenancy at Will—Measure of Damages for Eviction.*

A tenancy at will being the only leasehold estate which plain-

tiff had, the court should have instructed the jury that the value of the estate, less the rent to be paid, was the measure of damages for plaintiff's eviction.

*Avoiding Onerous Expenditure — No Justification for Injury to Plaintiff.*

The injury to plaintiff is not justified, by reason of the fact, that in committing the act from which plaintiff's injury arose, defendants were seeking to escape an expenditure of money, which they deemed onerous.

*Instructions—Part of Judgment Roll Under R. S. 1898 Sec. 3151— Properly Reviewable.*

The instructions of the court form part of the judgment roll under Sec. 3151, R. S. 1898, and being therefore a part of the record, were properly before the court for review.

*Instructions Presumed to be in Writing, Unless Contrary Appears.*

Although the instructions of the court were not set out in the bill of exceptions, under the provisions of Sec. 3147 R. S. 1898, it will be presumed that they were in writing in the absence of any showing that they were given verbally, in pursuance of the exception contained in said act.

(Decided February 23, 1899.)

Appeal from the 3rd District Court Salt Lake County, Hon. A. N. Cherry, *Judge.*

Action by plaintiff for damages on account of having been unlawfully evicted by defendants from a certain store building in Salt Lake City. From a verdict and judgment for plaintiff defendants appeal. *Reversed.*

*Messrs. Dickson, Ellis & Ellis,* for appellants.

The alleged parol lease of plaintiff being for more than one year is void under the statute of Utah and no suit founded upon such a lease, or estate for two years, or any particular time exceeding one month, can be maintained.

18 Utah.—30.

It was a mere tenancy at the will of Houston, or from month to month, even though one-half was turned over to the plaintiff by parol agreement that plaintiff should pay one-half of the improvements and pay half the rent. *Talamo* v. *Spitz Miller*, 120 N. Y. 37; 17 Am. St. R. 607; *Thomas* v. *Nelson*, 69 N. Y. 119; *Trust Co.* v. *Garbutt*, 6 Utah, 342; *Mahon* v. *United States*, 16 Wall, 143; 6th M. & W., 224; *Dung* v. *Parker*, 52 N. Y. 496; *O'Neill* v. *New York Cen. & H. Ry.*, 60 N. Y. 138.

*Messrs. Krebs & Hoppaugh*, and *Messrs. Moyle, Zane & Costigan*, for respondent.

The point is made on p. 19 of appellant's brief that the parol lease was a tenancy at will or from month to month, and cases are cited that a recovery can only be had for a month's term. But those cases will be found to be cases where the tenant at will or from month to month, sues his landlord, where notice to quit was either given or not required. But in this state the statute prescribes that to terminate a tenancy at will, a notice to quit is required. 2 Compiled Laws, Sec. 3788, p. 400. R. S. Sec. 3575, Subd. 2, p. 791.

And it is the admitted fact that this tenancy at will continued to exist during the whole of Houston's term, and the record so states. To say that a stranger could shorten that term by an eviction is simply to say that a man can benefit by his own wrong.

Baskin, J.

This is an action for the recovery of damages alleged to have been received by the plaintiff on account of having been unlawfully evicted by the defendants from a certain

store building, situated on Main street, Salt Lake City, and designated as No. 230. On the trial the jury found for the plaintiff; judgment thereon was entered, and from this judgment defendants appeal. Among other things the complaint alleges that the plaintiff, at the time mentioned in said complaint, was and still is a corporation; that for the period of two years, commencing on the first day of March, 1895, and continuously up to, and including the first day of March, 1897, plaintiff was lawfully entitled to the possession of the following described real estate, situated in the city and county of Salt Lake, State of Utah, to wit: The south half of the store building known and designated as No. 230 Main street, in said city; and that during all of said period plaintiff had a leasehold estate in and to all of said premises as tenant at will in possession, and entitled to the possession under and by virtue of a parole lease thereof for the term of two years from and after the 1st day of March, 1895, and as lessee therein, was entitled to the possession of the whole of said premises during all of said period; that on the 18th day of November, 1895, the plaintiff being then in possession, the said defendants, with a force of men, willfully, wantonly, and oppressively tore down and utterly demolished said store building, threw into the street, broke and destroyed plaintiff's stock, tore down and injured plaintiff's signs, and destroyed, carried away and lost plaintiff's records, and prevented plaintiff, by force, from carrying on its said business, and ever since have prevented plaintiff from taking possession of said premises, and deprived plaintiff of all benefits of its leasehold interest in said property; that since the 1st day of November, 1895, and during the whole of said term, to wit: Since the 1st day of November, 1895, and up to and including the 1st day of March, 1897, it has been, by the

several acts of trespass of said defendants so continuing as aforesaid, utterly deprived of the possession of said premises, and of the benefit of its said leasehold estate.

In the prayer of the complaint damage is claimed: First. For the value of plaintiff's leasehold estate. Second. For the destruction of certain personal property. Third. For injury to plaintiff's special business. Fourth. For loss of plaintiff's income. Fifth. For exemplary damages. The whole amount of the damages claimed was $16,400.00.

The answer denied that the plaintiff was a corporation, or ever was lawfully in possession or lawfully entitled to the possession of the premises described in the complaint, and after many other specific denials, in justification of the acts charged, alleged, in substance, that on and ever since the 28th day of February, 1895, the defendants have been, and still are the owners of, and in possession of lot 8, block 58, plat "A", Salt Lake City Survey; that on the date aforesaid, there was on said lot an old dilapidated building; that No. 230 mentioned in the complaint, was the entrance to a room in said dilapidated building, and that on said last mentioned date the defendant leased said room in said building to J. W. Houston, for a term of two years from the 1st day of March, 1895; that on the 19th day of October, 1895, the inspector of buildings, and the chief of the fire department, and the committee on fire department of said Salt Lake City, in pursuance of the provisions of said ordinance, made an examination of said building and found the same to be dangerous and unsafe to property in the vicinity of said building, and on the date last aforesaid, and after said examination, the said inspector of buildings notified these defendants to make, and required them to make, extensive and expensive repairs in and upon said said building in order to render

the same safe to other property in the vicinity thereof, and further notified these defendants that if they failed to make such repairs immediately, he, said Inspector of Buildings, would condemn the whole of said building, and in pursuance of the provisions of said ordinance, would cause the whole of said building to be demolished; that the necessary cost and expense of making the repairs to said building so required by the said Inspector of Buildings, would have amounted to a large sum of money, to wit, to a sum not less than $4,000.00; that the estimated cost of said repairs as made by said Inspector of Buildings was $3,897.00; that with such repairs made said building would have been worth much less than the cost of said repairs; that on, to wit, the 22d day of October, 1895, these defendants, in obedience to the provisions of said ordinance and the said notice and demand of said Inspector of Buildings, determined to cause said building to be demolished, and on the date last aforesaid these defendants entered into a contract with one Frank Harrigan, whereby the said Harrigan, in consideration of certain promises on the part of the defendants, undertook to demolish said building and remove the same and the debris thereof from said premises. That thereafter, and on the 1st day of November, 1895, the said Harrigan commenced the demolition of said building as such contractor, and has since completed the work of demolishing and removing the same and the debris thereof from said premises. That the work of demolishing said building by said contractor as aforesaid constitutes the alleged wrongs and trespasses complained of by said plaintiff in said complaint.

. From the record it appears that the plaintiff was not incorporated until the 15th day of March, 1895, although on the first of that month the articles of the corporation

had been prepared, and that said corporation had been arranged for and agreed to by the persons who were engaged in forming the same. It is admitted by both parties that a lease of said room No. 230, by defendants to the said J. W. Houston, for the period of two years from March 1st, 1895, was made; that said room was located in a large building owned by defendants. There was no lease to J. W. Houston of the ground upon which said building stood.

M. J. Mitchell, a witness for plaintiff, was asked by plaintiff's counsel, "whether he had had any conversation with J. W. Houston concerning the subletting of said room No. 230," and over the objection of the defendant's counsel, was allowed to answer. The witness answered "that the plaintiff through him as manager, leased one-half of said No. 230 Main street on the first day of March, 1895, from said Houston by parol lease for the period of two years and until March 1st, 1897," and defendant's counsel moved the court to strike out the answer of the witness upon the ground" that the said answer was irrelevant, immaterial and incompetent for the reasons stated in the objection to the question."

The following were among the reasons stated, towit: That the plaintiff, at the date mentioned, not being then incorporated, had no legal existence, and that no one could be authorized to act for it, or in its behalf; that the lease being by parol, and for two years, was absolutely void, under the statutes of Utah. The motion was overruled, and exceptions taken.

The witness Mitchell, was also asked whether the said J. W. Houston, ever gave him or the plaintiff any notice to quit and surrender one-half of said room No. 230. To this question defendants, by their counsel, objected upon the ground that same was irrelevant and immaterial, and

the objection being overruled, and an exception taken, the witness answered that "he had received no such notice, but on the contrary, plaintiff and Houston had continued their relations under said sub-lease, and that the same had never been terminated, but their relations as landlord and tenant thereunder continued during the whole of said term." The action of the court, in admitting in each instance the testimony of this witness, over the objections of the defendants' counsel before referred to, is assigned as error.

The first objection to this testimony is well taken if the plaintiff did not lease one-half of room No. 230, as alleged by witness Mitchell, on March 1st, 1895. We think it is clear that it did not, for two reasons: 1st. Because the plaintiff not being incorporated at that time had no capacity to take or hold a leasehold estate, or to perform any act; nor could any one perform any act for it as agent or otherwise. Mitchell states that the lease was made to plaintiff through him as manager. He does not pretend that it was made to him in trust for the corporation thereafter to be formed. It is very doubtful whether an anticipated corporation could be a *cestui que trust*. But as there is no claim that the lease was made to Mitchell, or that he acted in any other capacity than that of manager, in procuring it, that question is not involved.

One of the essential requisites of a lease, and in the absence of which no leasehold estate can be passed from the lessor, is the existence of some one being capable of taking and holding as lessee. This essential element was lacking in this case, and therefore no lease was made or could have been made to the plaintiff on the 1st day of March, 1895. 2d. The alleged lease, being by parol for two years, was void under the statute of frauds, and therefore had no force or effect whatever. It passed no lease-

hold estate.    The relation of landlord and tenant could not be created by or continued under it.

It follows that the declarations of the witness Mitchell, that plaintiff and Houston had continued their relations under said sub-lease, and that the same had never been terminated, but their relations as tenant and landlord thereunder continued during the whole of said term, of two years, was untrue and misleading.    These statements were untrue for another reason.    It is alleged in the complaint that the defendants on the 18th day of December, 1895, tore down and utterly demolished said store building, and afterwards erected another building in its place.    In the answer the defendants admit that they did destroy said store room by tearing down and removing from the premises a dilapidated building in which said room was located, and do not deny that they afterwards erected another building on the lot on which the former building stood.

To assert that the plaintiff continued to have a leasehold estate in said store room after the building, in which it was located, was demolished, is the same as to assert that the plaintiff was possessed of an estate in nothing. "*Ex nihilo nihil fil.*"    To say that the relation of landlord and tenant continued between the said Houston the lessor and the plaintiff, after the destruction of said store room, is the same as to say that something may spring from and be maintained by nothing.    It makes no difference how or by whom the destruction was accomplished, the result is the same.    When the subject-matter of the alleged lease was destroyed, the estate of both the lessor and lessee ended, and the relation of landlord and tenant could not thereafter survive.    The following cases support this view:   *Kerr et al.* v. *The Merchants Exchange Co.*, 3 Edwards, Ch. 333; *Graves* v. *Berdan*, 26 N. Y.

498; *Watson* v. *Cornish*, 5 Ohio, 477; *Shawmut Bank* v. *City of Boston*, 118 Mass. 125; 3 Suth. on Damages, Sec. 852; 2 Taylor on Landl. & Tenant, Sec. 520; 12 Am. & Eng. Ency. of Law, 1016 and cases cited in note.

The demolition by the defendants, ended the leasehold estate of the plaintiff (what that estate was will hereafter be considered) and the plaintiff's only remedy for this wrong is an action to recover the value of the estate so destroyed.

The statement of the witness Mitchell, that no notice to quit was ever given is wholly immaterial, because, under the circumstances, such a notice could not have had any effect, as it was physically impossible for the plaintiff to quit, or for the lessor to re-enter.   We think that both of the exceptions to the testimony, objected to by defendant's counsel are well taken.   That the defendants were prejudiced by the admission of this testimony, is made more apparent by those instructions of the court, which are based upon the same.   At the request of the plaintiff the court gave the following instructions:

"In this case the court instructs the jury that the plaintiff relies upon a sub-lease from Houston, who was a tenant of the defendants under a written lease for two years from March 1, 1895, to March 1, 1897, and that the terms of the sub-lease to the plaintiff gave the plaintiff the right to enjoy the premises leased to him during Houston's term until Houston terminated the lease, and it being an uncontradicted fact that Houston never, at any time, terminated the sub-lease, the plaintiff was entitled to the premises sub-leased to it for the remainder of the term from November 17, 1895, to March 1, 1897."

This instruction, in effect, is a repetition of what the witness Mitchell testified to, and informed the jury that the leasehold estate of the plaintiff, and his term under the

sub-leases continued after the destruction of the subject-matter of the lease, from November 17, 1895, to March 1, 1897, a period of more than fifteen months.

It is too self-evident to require further argument, that such was not the case. It has already been shown that the alleged parol lease was ineffective, and conferred no rights whatever upon plaintiff; however, after the plaintiff became incorporated and capable of taking and holding a lease estate, it entered into possession of said store room and continued to occupy one-half thereof up to the time the store was destroyed, and while it is not alleged that the plaintiff ever paid any rent, nor does the evidence disclose any such fact, yet as the bill of exceptions does not purport to contain all of the evidence, from the circumstances of the case disclosed by the record it is fair to presume that rent was paid up to the date of the destruction of said store room.

1 Taylor's Landlord and Tenant, Sec. 19, states that "The law will, in general, imply the existence of a tenancy whenever there is an ownership of land on one hand, and an occupation by permission on the other; for in such cases it will be presumed that the occupant intended to pay for the use of the premises."

Counsel, for both parties, have treated the tenancy in this case, as one at will, and we are of the opinion that it is such, not by virtue, however, of any positive arrangement entered into between the plaintiff and his lessor, but by virtue of an implication of law arising from the voluntary acts and relations of these parties.

The leasehold estate of the plaintiff which was destroyed by the destruction of said store room, was therefore simply a tenancy at will, and the measure of damages for such destruction is the value of the thing destroyed. We do not intend to assert that there cannot be a recovery by the

plaintiff of other special damages besides the loss of his leasehold estate, but the measure of damages for that particular loss is the value of the estate destroyed.

The court instructed the jury on this branch of the case as follows: "In considering the actual loss of the plaintiff, if you find it has sustained any, you should take into consideration the value of the leasehold estate for the time plaintiff was evicted therefrom. The value of the lease to plaintiff would be what it was actually worth, less the rental to be paid for the term which plaintiff was entitled to hold the same."

This instruction, in connection with the one before quoted, in which the jury was told that the plaintiff was entitled to the premises sub-leased to it for the remainder of the term from November 17, 1895, to March 1, 1897, left it to the jury to return a verdict for the value of a leasehold estate for a definite term, when no such term ever existed. A tenancy at will was the only leasehold estate which the plaintiff had under the sub-lease. The injury to the plaintiff was the destruction of that estate. The jury therefore should have been instructed that such was the fact, and that the value of that estate, less the rent to be paid by plaintiff, should be allowed as an item of plaintiff's damages.

The instructions given seem to have been predicated upon the idea that because no notice to quit was given, the term continued after the destruction of the subject-matter of the lease. If this were so, the tenancy being one at will, then the time is not yet ended, and will not be until notice to quit shall have been given. It is improbable that such notice will ever be given.

If this case had been brought to trial on the day that suit was instituted would the damages then have been measured by the value of the leasehold estate for over

fifteen months ? Certainly not. They would, necessarily, have been measured, as they should have been in this trial, by the value of an estate at will. The failure to give notice to plaintiff to quit after the destruction of the store room, has no such effect as claimed,, because, such notice, if it had been given, there being no subject-matter, would have proved utterly fruitless. How long the tenancy at will would have lasted had the building not been demolished no one could know. Certainly any claim based upon the idea that it would have been continued for fifteen months is not tenable. The value of an estate at will, certainly, is of much less value than an estate for the term mentioned in the court's instructions.

We are of the opinion that these instructions, considered together, are erroneous.

The court further instructed the jury, at the request of the plaintiff, in substance, that the justification set up by defendants, was no defense to the plaintiff's right to recover, but that it might be considered as effecting the question of punitive or exemplary damages.

We do not think the exception to this instruction is tenable. The city authorities did not require defendants' building to be torn down. They only required the defendants to make certain repairs, and notified them that if they failed to make the repairs that they would tear down the building. The defendants chose to destroy the building, rather than incur the expense of making the improvements which they claim would have cost more than the building would have been worth after the required improvements were made.

The defendants were, certainly, not justified in inflicting an injury upon the plaintiff in order to relieve themselves from an expenditure of money, which they deemed onerous.

A preliminary objection was made by plaintiff's counsel to the consideration of the instructions of the court, because they were not set out in the bill of exceptions.

Sec. 3147, subdivision 4, of the Rev. Stat. is as follows: "When the evidence is concluded, the court shall instruct the jury in writing upon the law applicable to the case, and if it state the testimony of the case, it must inform the jury that they are the exclusive judges of all questions of fact; Provided, that with the consent of both parties entered in the minutes of the court the court may instruct the jury orally, in which case the instructions shall be taken down by the court stenographer."

Sec. 3151, provides that, "All instructions requested or given shall be filed by the clerk and become a part of the judgment roll."

Under Sec. 3147, subdivision 4, the court is required to instruct the jury in writing, except when both parties consent to an oral charge. In the absence of any showing that the charge was given in pursuance of the exception, the court will presume that it was in writing. However, in this case the instructions appear among (and we are of the opinion that they constituted part of the judgment roll, under the sections of the statute before quoted) the other papers in the transcript, which constitute the judgment roll, under said sections, and the clerk certified that said transcript contains the charge of the court to the jury.

As the judgment roll always constitutes a part of the record on appeal from the final judgment, the instructions of the lower court in this case were properly before the court for review.

We are of the opinion that the judgment should be reversed, with costs, and the cause remanded for a new trial.

It is so ordered by the court.

BARTCH C. J. and McCARTY, Dist. Judge, concur.