**2017 UT App 221**

## THE UTAH COURT OF APPEALS

DAVID DRAKE LARSEN,
Appellant,
*v.*
DAVIS COUNTY SCHOOL DISTRICT,
Appellee.

Opinion
No. 20160099-CA
Filed November 30, 2017

Second District Court, Farmington Department
The Honorable John R. Morris
No. 150700222

Erik M. Ward, Lindy W. Hamilton, and Robert W.
Gibbons, Attorneys for Appellant

Sean D. Reyes and Peggy E. Stone, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
KATE A. TOOMEY and JILL M. POHLMAN concurred.

HARRIS, Judge:

¶1      Plaintiff David Drake Larsen alleges that in 2013, when he was sixteen years old, one of his high school teachers (Teacher) initiated a romantic relationship with him, beginning with "flirtatious conversations" and text messages, and eventually culminating in sexual intercourse. In 2015, Larsen sued the Davis County School District (the District), asserting that the District was negligent in its hiring, supervision, and retention of Teacher, and seeking recovery for damages he claims to have sustained as a result of his relationship with Teacher. The district court dismissed Larsen's lawsuit, determining that the District was immune from suit pursuant to the Governmental Immunity Act of Utah (the Act). Because we conclude that the Act, under either

of two different interpretations and as construed by our supreme court, compels dismissal of Larsen's claims, we affirm.

BACKGROUND

¶2    In 2013, Larsen was a student at Davis High School in Kaysville, Utah. Larsen alleges that Teacher "initiated a romantic relationship" with him while she was his teacher. Specifically, Larsen asserts that the relationship began with "flirtatious conversations" in the classroom, as well as text messages, and that Teacher encouraged him to visit her classroom during her preparation period to continue their conversations. According to Larsen, Teacher eventually asked him to meet her privately, both on and off school grounds, and some of these private meetings included "inappropriate sexual contact." Larsen alleges that the "first sexual intercourse" between him and Teacher "was initiated by [Teacher] luring [Larsen] from school grounds and then driving him to her home, during school hours," and that "[a]t least three additional sexual encounters occurred during school hours, on or near school grounds."

¶3    Larsen sued the District, alleging that the District was negligent in its hiring, supervision, and retention of Teacher. Specifically, Larsen asserts that, at the time it hired Teacher, the District knew, or at least should have known, that Teacher "had been previously terminated from former employment due to sexual misconduct." In addition, Larsen asserts that on at least one occasion, the District "reprimanded Teacher" after learning that she had been involved with "inappropriate contact with students," but that the District "failed to take sufficient steps to either terminate her or supervise her."

¶4    As part of his negligence claim, Larsen specifically asserts that the District "failed to adequately train, retrain, and/or supervise its employees"; "negligently screened and hired an employee whom the [D]istrict knew or should have known was unfit to be a teacher and posed a risk to students"; "failed to supervise a teacher whom the [D]istrict knew or should have

known posed a risk to students"; "negligently retained a teacher who was engaging in inappropriate behavior with students"; and "failed in its duty to supervise and direct its employees in a manner so as to protect its students from harm."

¶5 In addition to his claim for negligence, Larsen also brought claims for negligent infliction of emotional distress, breach of common law duty to protect from harm, vicarious liability for sexual misconduct, and vicarious liability for seduction.

¶6 Before answering, the District moved to dismiss Larsen's entire complaint for failure to state a claim pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure, asserting that all of Larsen's claims were barred by governmental immunity. Specifically, the District pointed out that governmental immunity is not waived for injuries that are proximately caused by "assault" or "battery," and argued that Larsen's injuries were proximately caused—at least in part—by the "assault and battery" that Teacher allegedly inflicted upon Larsen.

¶7 After full briefing and oral argument, the district court agreed with the District and dismissed Larsen's complaint. The district court determined that Teacher's conduct toward Larsen was an "assault" or "battery," and that this assault or battery was at least a proximate cause of Larsen's injuries, as pleaded in his complaint. The district court determined that dismissal was appropriate on immunity grounds as long as the assault and battery was "a cause" of Larsen's injuries, even if it was not the "sole cause."

¶8 Larsen appeals the district court's dismissal of his complaint.

ISSUE AND STANDARD OF REVIEW

¶9 The sole issue presented by this appeal is whether the district court properly dismissed Larsen's complaint pursuant to

rule 12(b)(6). "A motion to dismiss is appropriate only where it clearly appears that the plaintiff[] would not be entitled to relief under the facts alleged or under any set of facts [he] could prove to support [his] claim." *Miller v. West Valley City*, 2017 UT App 65, ¶ 12, 397 P.3d 761 (citation and internal quotation marks omitted). In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, we accept the facts pleaded as true, interpreting those facts and reasonable inferences drawn from the facts in the light most favorable to the plaintiff. *Moss v. Pete Suazo Utah Athletic Comm'n*, 2007 UT 99, ¶ 8, 175 P.3d 1042. Because the propriety of the district court's decision to grant the District's motion to dismiss presents a question of law, we review for correctness. *Spencer v. Glover*, 2017 UT App 69, ¶ 5, 397 P.3d 780.

ANALYSIS

¶10 The Act, as formulated in 2013,[1] stated as a general proposition that "each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function." Utah Code Ann. § 63G-7-201(1) (LexisNexis Supp. 2012). However, the Act waives governmental immunity in certain circumstances, and some of the waivers contain exceptions. Thus, in cases where a governmental entity asserts that it is immune from suit pursuant to the Act, we apply a three-part test to determine whether immunity exists. *Thayer v. Washington County School Dist.*, 2012 UT 31, ¶ 8, 285 P.3d 1142. First, we examine "whether

---

1. The parties agree that the 2013 version of the Act governs the outcome of this case. It is worth noting, however, that in 2015 the legislature amended and recodified the relevant provisions of the Act. Governmental Immunity Act Amendments, ch. 342, § 3, 2015 Utah Laws 1868, 1868–71. We are not asked to determine whether the outcome of this case would have been different under the current version of the Act.

the activity undertaken is a governmental function." *Id.* (citation and internal quotation marks omitted). Second, we determine "whether governmental immunity was waived for the particular activity." *Id.* (citation and internal quotation marks omitted). Finally, we look to see whether immunity has been reinstated through a statutory exception to the immunity waiver. *Id.*

¶11  In this case, the first question is not at issue; all parties agree that the District was engaged in a governmental function when it operated Davis High School and hired and supervised Teacher. Instead, this case hinges on steps two and three: whether immunity has been waived and, if so, whether there is an exception to that waiver.

¶12  Larsen directs us to the statutory waiver of governmental immunity for acts of negligence. That waiver is found in subsection (4) of section 301 of the Act, and provides as follows:

> Immunity from suit . . . is waived as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment.

*Id.* § 63G-7-301(4) (LexisNexis 2011). The District, for its part, directs us to the next statutory provision, subsection (5), which contains an exception to the negligence waiver:

> Immunity from suit . . . is not waived under Subsection[] (4) if the injury arises out of, in connection with, or results from . . . assault [or] battery.

*Id.* § 63G-7-301(5)(b) (LexisNexis 2011). Our supreme court has recently held that the phrase "arises out of, in connection with, or results from" as used in subsection (5) means "proximate" causation. *Barneck v. Utah Dep't of Transp.*, 2015 UT 50, ¶ 44, 353 P.3d 140 (stating that "the exception provisions (reinstating immunity) are properly invoked only where a plaintiff's injury is proximately caused by immune conduct").

¶13 Our task in this case is to interpret the subsection (4) waiver of immunity for negligence in tandem with the subsection (5) exception to that waiver. We perceive two plausible interpretations of the language of these provisions, and we examine each one in turn.

A

¶14 The first potential interpretation of the Act is straightforward. Under this interpretation, the waiver of immunity for negligent acts, clearly articulated in subsection (4), is completely nullified by subsection (5) if "the injury" resulting from the negligence is proximately caused by any of the items listed in subsection (5), including "assault" or "battery." *See* Utah Code Ann. § 63G-7-301(5); *see also Barneck*, 2015 UT 50, ¶ 44. Under this construct, the immunity waiver for negligence either never springs into being in the first place (if the negligence happens later in time than the subsection (5) condition) or is entirely erased after the fact once a subsection (5) condition occurs. Simply put, if "the injury" is proximately caused by any of the conditions listed in subsection (5), then "[i]mmunity from suit . . . is not waived under Subsection[] (4)." *See* Utah Code Ann. § 63G-7-301(5).[2]

¶15 Under this approach, then, if the District can demonstrate that Larsen's alleged injury was proximately caused by "assault" or "battery," then the District is immune from Larsen's suit.

---

2. By enacting the 2015 amendment, the legislature adopted language that supports this construct more clearly. Under the current statute, "immunity is not waived[] for any injury proximately caused by a negligent act . . . if the injury arises out of or in connection with, or results from" any of a long list of conditions, including "assault" or "battery." *See* Utah Code Ann. § 63G-7-201(4) (LexisNexis 2016).

B

¶16    Under the second option, the language of the negligence waiver and the subsection (5) exception is interpreted in a way that allows for the possibility that a plaintiff's injury can be the result of multiple separate causes (for instance, *both* a governmental entity's negligence *and* a third party's assault or battery), and that principles of comparative negligence and apportionment of fault can be applied to separate them.

¶17    Under this construct, the waiver of immunity in subsection (4) applies to a governmental entity's negligent conduct more broadly. Immunity for the negligent conduct is entirely waived, and then later, when a subsection (5) condition arises, a revocation of that waiver occurs, which depending upon the nature of the injury may be a complete revocation or only a partial revocation. This interpretation focuses on the fact that the Act uses the term "injury" rather than "claim" or "lawsuit" or "cause of action," and construes "injury" as being non-monolithic. Conceptually, part of an injury could be caused by negligence, and part of an injury could be caused by a battery. Interpreted in this manner, the Act leaves open the possibility that a factfinder could differentiate between that portion of a plaintiff's injury that is proximately caused by negligence—for which a governmental entity is not immune under subsection (4)—and that portion of a plaintiff's injury that is proximately caused by an immunity-invoking condition, such as a battery—for which a governmental entity retains immunity under subsection (5).

¶18    It is, of course, common for plaintiffs to allege injury that stems from more than one cause; indeed, Utah's model jury instructions regarding causation contain plain guidance on the issue. *See* Model Utah Jury Instructions 2d CV209 (2016), https://www.utcourts.gov/resources/muji/    [https://perma.cc/VR4H-HARP] (noting that "[t]here may be more than one cause of the same harm"); *see also McCorvey v. Utah State Dep't of Transp.*, 868 P.2d 41, 45 (Utah 1993) (stating that "there can be

more than one proximate cause . . . of an injury"). In such cases, our tort law provides useful tools for determining what portion of a plaintiff's injuries was caused by each particular actor's conduct. Some of the most useful of these tools are the doctrines of comparative negligence and apportionment of fault, principles that allow a factfinder, usually a jury, to ascribe to a particular actor liability for only that portion of a plaintiff's injury for which that actor is responsible. *See* Utah Code Ann. § 78B-5-818 (LexisNexis 2012). Indeed, Utah statutes regarding apportionment of fault, found in Utah's Liability Reform Act, allow a factfinder to "allocate the percentage or proportion of fault attributable to each person seeking recovery, to each defendant, [and] to *any person immune from suit*." *Id.* § 78B-5-818(4)(a) (emphasis added).

¶19 Although persons immune from suit may be included in the factfinder's apportionment calculus, "[a]ny fault allocated to a person immune from suit is considered only to accurately determine the fault of the person seeking recovery and a defendant and may not subject the person immune from suit to any liability." *Id.* § 78B-5-818(4)(b). Thus, Utah law regarding apportionment of fault would appear to be versatile enough to allow a factfinder to allocate fault to a governmental entity that is entirely or partially immune from suit under the Act, and even to allocate fault between a governmental entity's immune and non-immune conduct. *See Thayer*, 2012 UT 31, ¶¶ 63–65 (Lee, J., dissenting) (suggesting that "[a]pportionment of fault between the immune and non-immune acts of the School District would . . . be required" under the Liability Reform Act, because that statute applies to "two acts of a single tortfeasor where only one of those acts is actionable (and the other is not, due to immunity)"); c*f. Nixon v. Salt Lake City Corp.*, 898 P.2d 265, 270 (Utah 1995) (holding that the Liability Reform Act "contemplates the consideration of the fault of immune parties in determining whether a plaintiff is entitled to recover" when immunity arises under the Workers' Compensation Act).

¶20    In addition, our supreme court has recently provided the "solution to the riddle of *Field* [*v. Boyer*]," *see Jedrziewski v. Smith*, 2005 UT 85, ¶¶ 17, 23, 128 P.3d 1146 (citing *Field v. Boyer*, 952 P.2d 1078 (Utah 1998)), and has definitively determined that under the Liability Reform Act courts can—and should—apportion fault between and among negligent tortfeasors and intentional tortfeasors. *See Graves v. North E. Services, Inc.*, 2015 UT 28, ¶¶ 44–46, 345 P.3d 619. Indeed, although none of the parties in *Graves* were governmental entities, and therefore immunity was not an issue, the facts of that case are not dissimilar to the facts presented here. In *Graves*, the plaintiffs brought suit against a private provider of mental health services for negligent hiring, training, and supervision of employees after one of the provider's employees sexually assaulted a minor child. *Id.* ¶ 1. Our supreme court held that Utah's Liability Reform Act, including specifically the provisions regarding apportionment of fault, requires a factfinder to allocate fault as between the allegedly negligent health services provider and the employee who committed an intentional sexual assault. *Id.* ¶ 46.

¶21    This second interpretation of the Act was at one point espoused by two current members of our supreme court. *See Thayer*, 2012 UT 31, ¶¶ 63–65 (Lee, J., dissenting). In *Thayer*, a high school student died during production of a school musical when an actual firearm that school officials had approved for use in the production discharged near his head. His family sued the school district for negligence, and the district asserted that it was immune from suit under subsection (5) of the Act, under which immunity is not waived for "the issuance . . . [of a] permit, license, certificate, approval, order, or similar authorization." Utah Code Ann. § 63G-7-301(5)(c) (LexisNexis 2013). The majority of the supreme court concluded that the district's actions in allowing the firearm to be used in the musical did not fall within subsection (5), and therefore determined that, pursuant to subsection (4), the district was not immune from suit for negligence. *Thayer*, 2012 UT 31, ¶ 28. In the view of the two dissenting justices, however, the district's actions did fall within subsection (5), *id.* ¶ 51 (Lee, J., dissenting), but that conclusion

did not completely answer the question as to whether the district was immune. Instead, in their view, "the [d]istrict's immunity ought to turn on whether and to what extent [the student's] death was caused by its subsequent alleged negligence (for which the government is not immune) or by its issuance of an authorization (for which it is immune)." *Id.* ¶ 31; *see also id.* ¶ 56 (stating that the district "should be immune insofar as [the student's] death was proximately caused by the authorization" but "not immune to the extent the tragedy was the proximate result of the [d]istrict's subsequent negligence"). The dissent specifically called for apportionment of fault, pursuant to the Liability Reform Act, between the district's immune conduct and the district's non-immune conduct, expressing the view that apportionment of fault "is likewise suitable to the apportionment of liability between two acts of a single tortfeasor where only one of those acts is actionable (and the other is not, due to immunity)." *Id.* ¶ 63. Indeed, the dissenting justices went so far as to opine that "[a]pportionment of fault between the immune and non-immune acts of the [district] would thus be required under the terms of the statute." *Id.* ¶ 65. The other three justices did not weigh in on this issue, because their disposition of the case did not require it.

¶22　Since *Thayer*, our supreme court has not directly revisited the issue, and therefore a majority of the court has never endorsed the dissent's interpretation of the Act. In *Barneck*, however, even without confronting the issue directly, the court made certain statements—unanimously—that, in our view, foreclose any hope Larsen may have had that apportionment of fault might be available here.

¶23　Before *Barneck*, a governmental entity claiming immunity based on the "assault" or "battery" exception had to show only that the assault was a "but-for" cause of the plaintiff's harm. *See, e.g., Taylor ex rel. Taylor v. Ogden City School Dist.*, 927 P.2d 159, 163 (Utah 1996) (holding that the governmental entity would be immune if there was even a "[b]ut for" causal relationship between the assault and the injury). In *Barneck*, the court

ratcheted up the causation requirement, determining that "an immunity invoking condition," such as an assault or battery, "must be a *proximate* cause of the plaintiff's injuries in order to sustain the reinstatement of immunity." *See Barneck*, 2015 UT 50, ¶ 38. However, the court left in place the previous case law's admonition that "the assault need not be the sole cause of the injury to except the governmental entity from liability for the injury." *Taylor*, 927 P.2d at 163. Indeed, in *Barneck*, the court several times stated that, so long as the immunity-invoking condition was "*a* proximate cause" of the injury, the governmental entity would be entirely immune from suit. *Barneck*, 2015 UT 50, ¶¶ 38, 46, 47 (emphasis added). Significantly here, despite the fact that *Barneck* was decided just three years after *Thayer* and was authored by the same justice who penned the dissent in *Thayer*, at no point in the court's analysis in *Barneck* did the court discuss apportionment of fault.

¶24 Larsen cites hopefully to *Barneck*, correctly pointing out that the law now requires a stronger causal connection between the assault and the injury than it did before. Larsen's faith in *Barneck* is ultimately misplaced, however, due to *Barneck*'s reaffirmance of *Taylor*'s "sole cause" principle. After *Barneck*, the governmental entity must certainly show a stronger causal link between the immunity-invoking condition and the injury. But regardless of the strength of the causal link, the governmental entity has never been required to show that the immunity-invoking condition is the "sole cause" of the plaintiff's injuries, and *Barneck* did not change that. Even after *Barneck*, as long as the governmental entity can demonstrate that an immunity-invoking condition is "a proximate cause" of the plaintiff's injuries, it is immune from suit, regardless of whether there exist other non-immune causes of the plaintiff's injuries. In our view, two aspects of the *Barneck* decision make this reading inescapable.

¶25 First, the court in *Barneck* made clear that its previous cases, including *Taylor*, "would have come out the same way under the proximate cause standard." *Id.* ¶ 45. For example, in

*Taylor*, a student sued a school district for injuries incurred when another student pushed the first student through "an allegedly unsafe" window at a middle school. *Taylor*, 927 P.2d at 160. The first student suffered significant injuries, due at least in part to the glass from the window cutting his hand, and claimed that the school district had negligently failed to "install safety glass" in the school window. *Id.* The injured student argued that his injuries had "a greater link to the dangerous window in the restroom than" to the other student's assault and, therefore, the school should not have retained immunity under the Act. *Id.* at 163. In rejecting that argument, the court explained that "the assault need not be the sole cause of the injury to except the governmental entity from liability," and that the language of the Act demanded "only that there be *some* causal relationship between the injury and the risk." *Id.* (citation and internal quotation marks omitted). Because there was a causal relationship between the injury and the assault, the school retained immunity. *Id.* In other words, "but for the assault," the injured student's "injuries would not have occurred." *Id.* It did not matter to the court's analysis that the school district's negligence might also have played a role in the injuries. In *Barneck*, the court stated that *Taylor* (as well as some other cases[3])

---

3. In *Barneck*, the court noted that *Blackner v. State Department of Transportation*, 2002 UT 44, 48 P.3d 949, and *Hoyer v. State*, 2009 UT 38, 212 P.3d 547, would also have come out the same way under the new proximate cause standard as they did under the previous standard. And, although not mentioned in *Barneck*, the case of *Ledfors v. Emery County School District*, 849 P.2d 1162 (Utah 1993), is also materially indistinguishable. In all of those cases, as well as in *Taylor*, a governmental entity was accused of acting negligently, but was determined to be entirely immune from suit because an immunity-invoking condition or event was at least one of the causes of plaintiff's claimed injuries. *Hoyer*, 2009 UT 38, ¶ 34; *Blackner*, 2002 UT 44, ¶ 16; *Taylor ex rel. Taylor v. Ogden City School District*, 927 P.2d 159, 163 (Utah 1996); *Ledfors*, 849 P.2d at 1166. Furthermore, even though these cases

(continued…)

"would have come out the same way under the proximate cause standard" as it did under the but-for causation standard. *Barneck*, 2015 UT 50, ¶ 45; *see also id.* ¶ 47 (stating that the result in *Blackner v. State Department of Transportation*, 2002 UT 44, 48 P.3d 949 "would be correct under [the proximate cause standard] despite the fact that UDOT's alleged negligence was likely also a proximate cause").

¶26   Second, although the court in *Barneck* did not expressly discuss whether apportionment of fault would be appropriate in a case like this one, where plaintiff's injuries are allegedly caused by both negligent (non-immune) conduct as well as by immune conduct, the court did state in a footnote that when "a particular injury is a proximate result of *both* an act for which the government has waived immunity (such as negligence) *and* an act for which the statute reinstates it (such as a natural condition)," the government retains immunity. *Id.* ¶ 47 n.19. In our view, allowing apportionment of fault in this case is a result that cannot plausibly be squared with the language of *Barneck*'s footnote 19.[4]

---

(…continued)
were decided after passage of the Liability Reform Act, at no point in any of those cases was there any discussion of the possibility of apportioning fault between the governmental entities' immune actions and non-immune actions.

4. Moreover, the concept of superseding cause is of no assistance to Larsen under the facts of this case. "A superseding cause is an unforeseeable act of *subsequent* negligence that severs the causal connection to an initial causal act." *Thayer v. Washington County School District*, 2012 UT 31, ¶ 61, 285 P.3d 1142 (Lee, J., dissenting) (emphasis added) (citations omitted). In cases in which the immune conduct (e.g., battery) occurs *after* the alleged negligence, as a matter of chronology and logic the negligence cannot be a superseding cause of the subsequent conduct. *Id.*

(continued…)

¶27    Accordingly, although it is possible to interpret the language of the negligence waiver and the subsection (5) exception as allowing for apportionment of fault between the governmental entity's negligence and the immunity-invoking condition of the exception, and although two members of our supreme court had at one point appeared to espouse that interpretation, this second interpretation of the Act has never been adopted by a majority of our supreme court, and appears to have been at least implicitly rejected by the court's unanimous opinion in *Barneck*. After *Barneck*, apportionment of fault is not available, and we are therefore left with essentially the same question posed by the first interpretation: whether an immunity-invoking condition (e.g., assault or battery) is at least "a proximate cause" of the claimed injury. Under either interpretation, then, if that question must be answered in the affirmative, the District is immune from suit.

C

¶28    Next, we must proceed to examine the question to which both possible interpretations of the Act lead us: whether Teacher's "assault" or "battery" was "a proximate cause" of Larsen's claimed injury. After examination, we conclude that, under any principled reading of Larsen's complaint, Teacher's physical contact with Larsen was indeed a proximate cause of Larsen's injuries.

---

(…continued)

¶ 60 (stating that where "[t]he immune conduct (the assault) happened last," "it could not have been superseded by any subsequent act of negligence"). In this case, in order for Larsen to be able to prove that the District's negligent hiring and supervision of Teacher caused him harm, the District's negligence must have happened first, and led to subsequent actions by Teacher. Thus, in this case, the non-immune conduct cannot have been a superseding cause of the immune conduct.

¶29 In his complaint, Larsen alleges that the District negligently hired, supervised, and retained Teacher. In addition, Larsen alleges that Teacher, while acting within the course and scope of her employment with the District, "initiated a romantic relationship" with Larsen that included, eventually, "inappropriate sexual contact" and "sexual intercourse." Larsen states specific claims—his fourth and fifth causes of action—against the District, asserting that the District is vicariously liable for Teacher's "sexual misconduct" and "seduction." Teacher's inappropriate sexual contact with Larsen is inextricably intertwined with each cause of action. And, as noted below, Larsen alleges only one set of damages: that all of the conduct described in the complaint caused him to incur "medical expenses" as well as "severe emotional and mental distress." The relationship described in the complaint between Teacher's inappropriate sexual contact with Larsen and Larsen's injuries is more than just a "but-for" causal link. Rather, Teacher's contact is a proximate cause of Larsen's injury: a "cause which, in a natural and continuous sequence, unbroken by any new cause, produced the injury, and without which the injury would not have occurred." *See Nebeker v. Summit County*, 2014 UT App 244, ¶ 42, 338 P.3d 203 (citation and internal quotation marks omitted); *see also Holmstrom v. C.R. England, Inc.*, 2000 UT App 239, ¶ 36, 8 P.3d 281 (stating that a cause is a "proximate cause" if it "played a substantial role in causing the [plaintiff's] injuries").

D

¶30 In an effort to avoid the consequences of the Act, Larsen makes two arguments. First, he argues that Teacher's actions do not constitute "assault" or "battery," as he contends those terms should be defined by civil tort law.[5] Second, he argues that he

---

5. Although sometimes erroneously used interchangeably, "assault" and "battery" are actually two distinct concepts in civil tort law. Assault focuses on apprehension of harm. "An actor is

(continued…)

has alleged certain harm that is completely independent from the harm he sustained as a result of his physical contact with Teacher. We address each of these arguments in turn.

1

¶31 Larsen first argues that Teacher's conduct cannot constitute "battery" because Larsen alleges that he consented to the contact. Larsen appears to concede that, if we look to criminal law, Teacher's actions were unlawful regardless of whether Larsen consented. Indeed, under the criminal code, Larsen could not have legally consented to sexual contact with Teacher. *See* Utah Code Ann. § 76-5-401.2(2)(a)(ii)–(iii) (LexisNexis Supp. 2017). However, as we explain, Larsen's arguments here fail even under a civil definition of "battery" and, in any event, our supreme court has determined that consent is no defense to a civil battery case brought by a minor who alleges unlawful sexual contact. *See Elkington v. Foust*, 618 P.2d 37, 40 (Utah 1980).

¶32 A person commits the civil tort of battery if: "'(a) he acts intending to cause a harmful or offensive contact with the person

---

(…continued)

subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (b) the other is thereby put in such imminent apprehension." Restatement (Second) of Torts § 21 (Am. Law Inst. 1965). Battery, instead, focuses on actual contact. "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Id.* § 13. Larsen's complaint focuses on Teacher's actual contact with Larsen. Therefore, our analysis focuses on battery rather than on assault.

of the other or a third person, or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results.'" *Wagner v. State*, 2005 UT 54, ¶ 16, 122 P.3d 599 (quoting Restatement (Second) of Torts § 13 (Am. Law Inst. 1965)). If the contact is "deliberate," and is "harmful or offensive at law," then a battery has been committed. *Id.* ¶ 19. Harmful or offensive contact consists of contact "to which the recipient of the contact has not consented either directly or by implication," or to which "no reasonable person would consent." *Id.* ¶ 51.

¶33    Larsen argues that Teacher did not commit a battery upon him in this case, because the facts, as set forth in his complaint, do not allege that Teacher's contact was unwanted; indeed, Larsen goes so far as to state in his brief that "Larsen craved and requested ongoing interaction" with Teacher, and that "there was no unwanted contact between Larsen and [Teacher]."[6] Larsen's argument fails, however, because whether Larsen *actually* consented, as a factual matter, is not the relevant question. Instead, even the civil definition of battery asks whether the contact was "harmful or offensive *at law*." *Id.* ¶ 19 (emphasis added). And our legislature, through the passage of statutes making certain actions criminal, has provided a clear answer to that question.

¶34    Under our law, there are certain types of physical contact that are harmful and offensive as a matter of law, and to which no person can legally consent. Specifically germane here, our

---

6. These admissions on Larsen's part leave us to wonder how—if the contact were truly consensual and if the question of liability for battery, even for sexual contact with minors, were governed by questions of actual consent—Larsen would have ever been able to prove that he sustained measurable damages caused by the District's negligent hiring and/or supervision of Teacher. Because we affirm, however, these musings are rendered academic.

legislature has determined that no "minor" can legally consent to sexual contact with a person who is "10 or more years older than the minor at the time of the sexual conduct." Utah Code Ann. § 76-5-401.2(2)(a)(ii). Similarly, our legislature has also decided that no "minor" student can legally consent to sexual contact with an "adult teacher," regardless of the size of the age disparity between the minor student and the adult teacher. *Id.* § 76-5-401.2(a)(iii). Under either[7] of these provisions, Larsen could not have legally consented to sexual contact with Teacher, and therefore any such contact must be considered "harmful or offensive at law."

¶35   Indeed, although consent is usually a valid defense in civil intentional tort cases (such as battery cases), *see e.g.*, *Graves*, 2015 UT 28, ¶ 79 n.25 (stating that "in the context of intentional torts, a defendant may raise" the "affirmative defense" of "consent"); *Elkington*, 618 P.2d at 40 (stating that "generally consent is a defense to a willful tort"), consent is not an available defense if the plaintiff is a minor who cannot legally consent under the criminal law, *see* Restatement (Second) of Torts § 892C (Am. Law Inst. 1979) (stating that "[i]f conduct is made criminal in order to protect a certain class of persons irrespective of their consent, the consent of members of that class to the conduct is not effective to bar a tort action"). These principles have been adopted by our supreme court. *See Elkington*, 618 P.2d at 40.

¶36   In *Elkington*, the defendant was sued civilly for damages sustained by his adopted daughter, who alleged that the

---

7. Larsen's complaint does not contain any allegations regarding Teacher's age at the time of the sexual contact between Teacher and Larsen. However, at oral argument before the district court, the State informed the court that Teacher was "thirty-plus-year[s] old" during the relevant time period. Larsen has never taken issue with the State's representation, and it does not appear to be in dispute here that Teacher is at least ten years older than Larsen.

defendant had sexually abused her for several years, from "the time she was nine years old until she left home at age sixteen." *Id.* at 38. The case proceeded to a jury trial, and the defendant asked the trial court to give a jury instruction on consent, namely, that consent was a defense to the plaintiff's intentional tort claims. The trial court refused to give that instruction. To the contrary, the court instructed the jury that "consent by the plaintiff to the conduct of the defendant . . . is no defense." *Id.* at 39. The jury returned a verdict for the plaintiff, and the defendant appealed. Our supreme court affirmed, and noted the general rule that "consent is a defense to a willful tort," but held that this principle had "[no] application to the instant situation" because "the plaintiff was a minor and incapable of giving consent to acts of this nature," and because "the defendant is precluded from taking advantage of any consent he seduced or coerced her into giving to engage in such activities." *Id.* at 40. The court concluded its analysis by stating that the opposite position "would be so contrary to commonly accepted standards of decency and morality that any consensual agreement to engage in such conduct would be rejected by the law as against public policy and void." *Id.*

¶37 In sum, the civil definition of "battery" incorporates principles of consent from the criminal law. Accordingly, we conclude that Teacher's sexual contact with Larsen meets the definition of "battery," because under either civil or criminal law, Larsen was legally incapable of consenting to the contact.

2

¶38 Second, Larsen asserts that the harm he sustained as a result of his relationship with Teacher can be separated into two distinct categories: damage sustained as a result of physical contact with Teacher, and damage sustained as a result of non-physical interactions (e.g., discussions, text messages) with Teacher. Larsen argues that, even if the District is immune from suit pursuant to the "assault and battery" exception for the first category of damages, he may still sue the District for the second

category of damages. We are not persuaded that Larsen's damages can meaningfully be separated in this way.

¶39    As an initial matter, Larsen made no effort to plead separate categories of damages in his complaint. There, Larsen pleaded just one set of damages, namely, "economic and non-economic damages . . . , including but not limited to medical expenses" as well as "severe emotional and mental distress, and pain and suffering." As pleaded, Larsen alleged that these damages were caused by the District's negligence in hiring and supervising Teacher, as well as by Teacher's "sexual misconduct" and "seduction." A party is bound by the terms of his own pleading, *see Sutton v. Otis Elevator Co.*, 249 P. 437, 446 (Utah 1926) (explaining that "a party . . . is bound by his pleadings, especially the plaintiff in pleading the basis of his cause of action"), and Larsen's failure to plead separate categories of damages is fatal to his effort to separate them now.

¶40    Moreover, even if Larsen had attempted to properly plead two categories of damages in this case, that effort would not have availed him. There are limits to a party's ability to creatively plead around the restrictions imposed by the Act. *See Taylor*, 927 P.2d at 164 (citing cases, and stating that "[w]e concluded that such allegations were merely 'attempts to evade the statutory categories by recharacterizing the supposed cause of the injury' and were summarily rejected" (citations omitted)). In this instance, Larsen's effort to creatively categorize his damages as falling into separate categories is foreclosed by *Barneck*. As discussed above, we read *Barneck* to compel reinstatement of immunity when a governmental entity's immune conduct is "*a* proximate cause" of a plaintiff's injuries. *Barneck*, 2015 UT 50, ¶ 44 (emphasis added). Larsen cannot escape this conclusion by attempting to separate his alleged harm into two separate categories. Even under Larsen's creative approach, Teacher's battery is still "*a* proximate cause" of some of Larsen's injuries, and therefore the District retains immunity.

CONCLUSION

¶41   It might seem counterintuitive that our law provides no civil remedy against a school district that is alleged to have negligently hired and retained a teacher who has illegal sexual contact with her minor students. But this conclusion is, in our view, compelled by the Act and by Utah Supreme Court precedent.

¶42   Decades ago, after reluctantly dismissing a somewhat similar case, our supreme court invited legislative action by noting its "sympath[y]" toward citizens in Larsen's position, and by declaring that it is "unfortunate that any parent who is required by state law to send his or her child to school lacks a civil remedy against negligent school personnel who fail to assure the child's safety at school." *Ledfors v. Emery County School Dist.*, 849 P.2d 1162, 1167 (Utah 1993). In the intervening years, however, our legislature has not amended the Act to expressly provide for such a remedy. Under the language of the Act—under either one of two possible interpretations, and as the Act has been interpreted by our supreme court—the District is entirely immune from suit for the acts alleged here. Accordingly, the district court correctly dismissed Larsen's complaint.

¶43   Affirmed.

——————