2020 UT App 91

## THE UTAH COURT OF APPEALS

JUEL ERICKSON,
Appellee,
*v.*
CANYONS SCHOOL DISTRICT,
Appellant.

Opinion
No. 20190376-CA
Filed June 11, 2020

Third District Court, Salt Lake Department
The Honorable Mark S. Kouris
No. 190900333

Sean D. Reyes and Joshua D. Davidson,
Attorneys for Appellant

Wesley Felix and Brenda Weinberg,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

ORME, Judge:

¶1　　Canyons School District (the School District) seeks interlocutory review of the district court's denial of its motion to dismiss Juel Erickson's complaint against it. The court denied the motion because it concluded that it was too early to determine whether Erickson's injuries resulted from a battery, which determination would have necessitated dismissal of the case on governmental immunity grounds. Because there may be facts that Erickson could prove establishing that the student who injured her lacked the necessary intent for his action to constitute battery, we affirm.

BACKGROUND[1]

¶2　Erickson was a student at a high school within the School District's boundaries. On February 24, 2017, Erickson attended a school assembly held in the high school's gym. Before the assembly, a supervisor confiscated a home-made flag, fastened to a pole, from junior class officers and placed it on the east side of the gym. When a student retrieved the flagpole, the supervisor instructed another student to reconfiscate it. That student placed the confiscated flagpole underneath the bleachers, from where yet another student (Student) retrieved it. Student then climbed to the top of the bleachers and threw the flagpole into the crowd of students below, striking Erickson in the head and knocking her unconscious. No high school employee called an ambulance or provided Erickson with any medical care. Erickson thereafter "suffer[ed] from neck injuries and post-concussive symptoms."

¶3　In 2019, Erickson filed a complaint against the School District, the high school, the supervisor, and the State of Utah. The complaint alleged negligence, gross negligence, and vicarious liability against the defendants for "failing to secure the Flag Pole and keep other students from reaching it, failing to adequately supervise their students, and failing to provide medical assistance upon injury."

¶4　The defendants moved to dismiss Erickson's complaint pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure, arguing that under the Governmental Immunity Act of Utah, *see*

---

1. "On appeal from a motion to dismiss under Utah Rule of Civil Procedure 12(b)(6), we review the facts only as they are alleged in the complaint. As a result, we accept the factual allegations in the complaint as true and consider all reasonable inferences to be drawn from those facts in a light most favorable to the plaintiff." *Hall v. Department of Corr.*, 2001 UT 34, ¶ 2, 24 P.3d 958 (quotation simplified).

Utah Code Ann. §§ 63G-7-101 to -904 (LexisNexis 2019),[2] "a high school cannot be named as a party in a lawsuit; [Erickson] cannot pursue an action individually against [the supervisor], an employee of [the School District]"; Erickson "has asserted no facts to support a claim against the State of Utah"; and—the issue relevant to the current appeal—the School District could not be sued because "governmental entities are immunized against claims arising from battery." Erickson did not oppose the motion as concerned the supervisor and the State.[3] But in opposing the motion as to the School District, Erickson argued that dismissal was improper because the tort of battery requires that the actor "intend the action and its harmful or offensive consequences," and there still remained "a question of fact as to what [Student] intended when throwing the flag pole into the crowd of students." Analogizing to an example where "a person throws a football to a friend and that football strikes a bystander," she argued that "it is more likely than not that [Student] intended that the flag pole would be caught by his friends who were urging him to throw it to them," and "[i]f these are indeed the facts, then [Student's] action does not constitute battery."

¶5    The district court denied the motion to dismiss "on the grounds that based upon the inferences that favor [Erickson], it is too early in the case to grant the motion on the issue of battery." The School District then petitioned for permission to appeal from an interlocutory order, *see* Utah R. App. P. 5(a),

---

2. Because the statutory provisions in effect at the relevant time do not differ in any way material to our analysis from those now in effect, we cite the current version of the Utah Code for convenience.

3. Erickson did argue against dismissal of the high school from her suit, which opposition ultimately proved unsuccessful. Because the high school's dismissal is not at issue in this appeal, we do not discuss it further.

which the Utah Supreme Court transferred to this court for resolution, *see id.* R. 42. We granted the petition.

## ISSUE AND STANDARD OF REVIEW

¶6     The School District challenges the district court's denial of its motion to dismiss. "The propriety of a trial court's decision to grant or deny a motion to dismiss under rule 12(b)(6) [of the Utah Rules of Civil Procedure] is a question of law that we review for correctness." *Torgerson v. Talbot*, 2017 UT App 231, ¶ 7, 414 P.3d 504 (quotation simplified). Dismissal of a complaint is proper "only if it is clear from the allegations that the [plaintiff] would not be entitled to relief under the set of facts alleged *or under any facts it could prove to support its claim*." *Id.* (emphasis added). Accordingly, on review "we accept all facts alleged as true, and indulge all reasonable inferences in favor of the [plaintiff]." *Id.* (quotation simplified).

## ANALYSIS

¶7     The Governmental Immunity Act of Utah waives governmental immunity "as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment," Utah Code Ann. § 63G-7-301(2)(i) (LexisNexis 2019), but exempts from this waiver injuries that "arise[] out of or in connection with, or result[] from," among other things, "battery," *id.* § 63G-7-201(4)(b).[4] *See Sanders v.*

---

4. Courts apply a three-part test when determining whether a governmental entity is immune from suit under the Governmental Immunity Act of Utah. They (1) "examine whether the activity undertaken is a governmental function," (2) "determine whether governmental immunity was waived for the particular activity," and (3) "look to see whether immunity has been reinstated through a statutory exception to the

(continued…)

*Leavitt*, 2001 UT 78, ¶ 29, 37 P.3d 1052 ("[I]mmunity is retained under the Utah Governmental Immunity Act if an assault or battery is involved, regardless of who the tortfeasor is, and even if the assault or battery occurs as the result of the negligence of the state or state agent.").

¶8     The intentional tort of battery "was designed to protect people from unacceptable invasions of bodily integrity." *Wagner v. State*, 2005 UT 54, ¶ 57, 122 P.3d 599. *See* 1 Dan B. Dobbs et al., The Law of Torts § 33, at 82 (2d ed. 2011) [hereinafter Dobbs] ("Battery today vindicates the plaintiff's rights of autonomy and self-determination, her right to decide for herself how her body will be treated by others, and to exclude their invasions as a matter of personal preference, whether physical harm is done or not."). For purposes of defining the elements of battery, Utah has adopted the Second Restatement of Torts, *see Wagner*, 2005 UT 54, ¶ 16, which provides that a person commits battery against another "'if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results,'" *id.* (quoting Restatement (Second) of Torts § 13 (Am. Law Inst. 1965)). In simpler terms, for a contact to constitute battery, it must be (1) deliberately made and (2) harmful or offensive in a legal sense. *Id.* ¶ 19.

¶9     At the complaint stage of this litigation, the question is whether Erickson could prove a set of facts consistent with her complaint that would preclude dismissal on governmental

---

(…continued)
immunity waiver." *Larsen v. Davis County School Dist.*, 2017 UT App 221, ¶ 10, 409 P.3d 114 (quotation simplified). The third prong is the only one at issue in this appeal, i.e., whether Erickson's complaint conclusively alleges the tort of battery, thereby exempting the School District from the waiver of governmental immunity.

immunity grounds. In other words, mindful of the facts alleged in the complaint, we inquire whether there is at least one scenario in which Student did not batter Erickson. If the answer is in the affirmative, the district court correctly denied the School District's rule 12(b)(6) motion to dismiss. *See America West Bank Members, LC v. State*, 2014 UT 49, ¶ 13, 342 P.3d 224 ("A dismissal is a severe measure and should be granted by the trial court only if it is clear that a party is not entitled to relief under any state of facts which could be proved in support of its claim.") (quotation simplified). *Cf. Sanjuan v. American Board of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) ("One pleads a 'claim for relief' by briefly describing the events. At this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.").

¶10    Here, the second prong of the battery inquiry—that the contact is harmful or offensive at law—is readily met, even at this early stage. It is uncontested and, indeed, inarguable that a strike to the head by a flagpole is harmful because "no reasonable person would consent" to such a contact. *Wagner*, 2005 UT 54, ¶ 51. *See id.* ("A harmful or offensive contact is simply one to which the recipient of the contact has not consented either directly or by implication."). The resolution of this appeal therefore turns on the first prong—whether a provable set of facts exists under which Student did not intend for the flagpole to come into contact with Erickson. Because we agree with Erickson that at least one scenario exists in which Student lacked the requisite intent, namely where Student threw the flagpole intending for it to be caught by friends while not substantially certain that the flagpole would strike an unsuspecting student, the district court properly denied the School District's 12(b)(6) motion to dismiss.[5]

---

5. The School District argues that Erickson's assertion that Student may have intended to throw the flagpole to friends below should be rejected because her "complaint is devoid of

(continued…)

(…continued)

any such allegations." Although the School District acknowledges that, "at the motion to dismiss stage, Erickson is entitled to the benefit of all reasonable inferences from the facts alleged," it argues that "she is not entitled to unreasonable inferences based on pure speculation or conjecture." But other than noting that Erickson did not allege that specific scenario in her complaint, the School District does not explain how such an inference is unreasonable. Erickson's complaint alleges that "[S]tudent climbed to the top of the bleachers and threw the Flag Pole into the crowd of students below, . . . str[iking] Erickson in the head." The complaint is entirely silent as to Student's intent and motivations. And in light of other allegations in the complaint stating that more than one student attempted to retrieve the confiscated flagpole, it is reasonable to infer at the motion-to-dismiss stage that Student may well have thrown the flagpole into the crowd of students intending for a friend to catch it. *See America West Bank Members, LC v. State*, 2014 UT 49, ¶ 13, 342 P.3d 224 ("Rule 8(a) of the Utah Rules of Civil Procedure sets a liberal standard for complaints, requiring only that a complaint contain a short and plain: (1) statement of the claim showing that the party is entitled to relief; and (2) demand for judgment for specified relief.") (quotation simplified); *Zisumbo v. Ogden Reg'l Med. Center*, 2015 UT App 240, ¶ 11, 360 P.3d 758 ("Even if a complaint is vague, inartfully drafted, a bare-bones outline, or not a model of specificity, the complaint may still be adequate so long as it can reasonably be read as supporting a claim for relief, giving the defendants notice of that claim.") (quotation simplified). *See also Torgerson v. Talbot*, 2017 UT App 231, ¶ 7, 414 P.3d 504 ("A district court should grant a motion to dismiss only if it is clear from the allegations that the non-moving party would not be entitled to relief under the set of facts alleged *or under any facts it could prove to support its claim*.") (emphasis added); *Larsen v. Davis County School Dist.*, 2017 UT App 221, ¶ 9, 409 P.3d 114 (same).

¶11 "'The word 'intent' is used . . . to denote that the actor desires to cause the consequences of his act, or that he believes that the consequences are *substantially certain* to result from it.'" *Id.* ¶ 22 (quoting Restatement (Second) of Torts § 8A) (emphasis omitted) (emphasis added). *See also id.* ¶ 26 (stating that "[i]t is the consequential contact with the other person," not the act or movement itself, "that the actor must either intend or be substantially certain would result"). Whether the actor intended the contact to be harmful or offend is immaterial. Rather, the focus is on whether the actor intended to make a contact that is harmful or offensive *at law. Id.* ¶ 29. Because the focus of the intent analysis is on whether the actor desired the consequential contact or knew that it was substantially certain to result, it is necessarily a subjective inquiry, Dobbs § 29, at 75, which is inherently fact-intensive, *cf. Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co.*, 2019 UT 31, ¶ 68 (stating that subjective intent "implicates fact-intensive questions"). Thus, "the legal outcome [for the same act] will depend on the actor's surroundings and the actor's state of mind." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 8, at 35 (5th ed. 1984) [hereinafter Prosser]. For example, a person who pulls the trigger of a gun intending to shoot another and succeeds in wounding him is liable for battery absent some defense or justification. On the other hand, a hunter who pulls the trigger intending to shoot a bird and instead hits a person of whom the hunter was unaware is not liable for battery, although the act may constitute actionable negligence. *Wagner*, 2005 UT 54, ¶ 26.

¶12 Under the scenario Erickson suggests,[6] if Student threw the flagpole intending for it to be caught by other students who were urging him to throw it to them, he clearly did not mean for the flagpole to strike Erickson. But our inquiry relative to this

---

6. It may well be that there are other scenarios that would likewise be inconsistent with Student's act being a battery. We focus on the one Erickson advances because it is the one that has received the parties' attention in briefing.

specific scenario does not end here. An actor acts intentionally if he "desires to cause the consequences of his act, *or [if] he believes that the consequences are substantially certain to result from it.*" *Id.* ¶ 22 (emphasis added) (quotation otherwise simplified). *See* Restatement (Second) of Torts § 8A cmt. b ("If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.").[7] Thus, although Student might not have actually desired to strike

---

7. The Utah Supreme Court in *Wagner* embraced the Restatement section and quoted it verbatim. Unfortunately, in a couple of instances in the opinion, the Court used the phraseology "substantially likely" as well as the Restatement's language "substantially certain." *See Wagner v. State*, 2005 UT 54, ¶¶ 22, 25–26, 122 P.3d 599. The Court never said the two meant the same thing, and we do not think that the inconsistent usage was a subtle effort to equate the two. Indeed, the focus of *Wagner* was not on this aspect of the intent requirement of battery, namely what mental state short of absolute intent might qualify as intent for purposes of battery. *Wagner*'s focus was instead on whether it was the "consequential contact," not merely the act itself, that had to be intended. *Id.* ¶¶ 17–18, 26. The Court has not, so far as we can discern, addressed substantial certainty in the exact context now before us, but it has "adopted the Second Restatement of Torts to define the elements of [battery], including the element of intent," *id.* ¶ 16, and the Restatement clearly distinguishes substantial certainty from substantial likelihood, associating the former with intentional torts such as battery and the latter with recklessness, *see* Restatement (Second) of Torts § 500 cmt. f (Am. Law Inst. 1965) ("[A] strong probability is a different thing from the substantial certainty without which [the actor] cannot be said to intend the harm in which his act results."). The Court's occasional use in *Wagner* of the term "substantially likely" when discussing intent appears to be inadvertent rather than deliberate, and we attach no jurisprudential significance to the inconsistency.

Erickson, he would have nonetheless committed battery so long as, mindful of the weight of the flagpole and his throwing ability, he was substantially certain that the flagpole would strike an unsuspecting student when he threw it.

¶13   The School District argues, with our emphasis, that even under this scenario, Student nonetheless acted with substantial certainty because he "knew that it was *substantially likely* that the flagpole would come into contact with someone in the crowd of students." We disagree for two reasons.

¶14   First, as discussed above, the inquiry into whether an actor desired a harmful contact or knew that it was substantially certain to result is a subjective one and therefore highly fact-intensive. *See supra* ¶ 11. Such determinations are the exclusive province of the trier of fact and are typically improper even at the summary judgment stage of litigation, much less at the complaint stage. *See Uintah Basin Med. Center v. Hardy*, 2008 UT 15, ¶ 19, 179 P.3d 786 (stating that a district court is precluded from granting summary judgment "if the inferences depend upon subjective feelings or intent") (quotation simplified); *Haynes v. Department of Public Safety*, 2020 UT App 19, ¶ 11, 460 P.3d 565 ("[T]he parties' intentions cannot be determined as a matter of law in the context of a rule 12(b)(6) motion to dismiss."). The liberal pleading standards for complaints, *see America West Bank Members, LC v. State*, 2014 UT 49, ¶ 13, 342 P.3d 224, allow for the scenarios that Student was only somewhat aware of the risk of harmful contact or even completely oblivious to it. Thus, although it is entirely possible under the general scenario suggested by Erickson that the School District is correct that Student knew or was substantially certain that the flagpole would strike an unsuspecting student below, it is improper to dismiss the complaint on this basis because it is the role of the trier of fact to make this determination after all the facts are known.

¶15   Second, we disagree with the School District's contention that a showing of substantial *likelihood* satisfies the "substantial

certainty" standard. Substantial certainty requires a showing higher than that of mere recklessness. *See* Restatement (Second) of Torts § 8A cmt. b ("As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness," and "[a]s the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence."). Under the recklessness standard, the plaintiff must establish that, among other things, "the actor knew, or had reason to know, of facts which create a high degree of risk of physical harm to another." *Daniels v. Gamma West Brachytherapy, LLC*, 2009 UT 66, ¶ 42, 221 P.3d 256 (quoting Restatement (Second) of Torts § 500 cmt. a). Therefore, a showing of substantial certainty requires more than a showing that the actor knew there was a "high degree of risk," *id.* (quotation simplified), or strong probability that harmful or offensive contact would result from a contemplated action, *see* Restatement (Second) of Torts § 500 cmt. f ("[A] strong probability is a different thing from the substantial certainty without which [the actor] cannot be said to intend the harm in which his act results."); Prosser § 8, at 36 ("The mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent."); Dobbs § 29, at 74 ("Mere risk, . . . even a very high risk, is not enough to show substantial certainty."). Instead, a party must show that the actor believed that the legally harmful or offensive contact was essentially unavoidable. *See Certain*, New Oxford American Dictionary 284 (3d ed. 2010) (defining "certain" as "known for sure; established beyond doubt"); *Certainty*, New Oxford American Dictionary 284 (defining "certainty" as a "firm conviction that something is the case").

¶16 Substantial certainty is illustrated by the example in which a defendant, intending to put a specific individual to sleep, mixes sleeping powders into the food served by a cafeteria. If the defendant knows that people other than the intended target will eat the contaminated food, the defendant knows to a substantial certainty that the sleeping powders will

affect others. The law will therefore treat the defendant as if he intended to put the other diners to sleep, although that was not his specific aim or desire. *See* Dobbs § 29, at 73–74.

¶17    It is not enough to argue, as the School District does, that even under Erickson's scenario, Student would have known "that it was substantially likely that the flagpole would come into contact with someone in the crowd of students." Knowing that harmful contact is substantially *likely* to result is recklessness, at most, and not intent. For one to act with substantial *certainty*, it is insufficient that the actor merely appreciates the existence of a risk—even a very high risk. Rather, the actor must know that the harmful contact is essentially unavoidable as a consequence of his action.[8]

¶18    Because Erickson could potentially prove that Student intended his friends to catch the flagpole and was not substantially certain that the flagpole would strike an unsuspecting student, at least one scenario exists where Student did not commit the tort of battery and the School District would not have immunity. Accordingly, the district court properly denied the School District's motion to dismiss Erickson's complaint against it on the theory that it failed to state a claim.

CONCLUSION

¶19    At this early stage of litigation, the facts are yet to be determined. As this case moves forward, it might be revealed

---

8. As indicated, the inquiry is ultimately subjective. Whether the actor would know to a substantial certainty that throwing a flagpole to friends standing in a crowd of students would land off target would likely be very different if the actor was the state javelin champion as opposed to the state chess champion, who lacked any prior experience in throwing long, cylindrical projectiles.

that Student threw the flagpole into the crowd of unsuspecting students either desiring or substantially certain that harmful or offensive contact would result. In that event, a battery occurred and sovereign immunity insulates the School District from liability. But it might instead be revealed that Student threw the flagpole intending it to be caught by friends who were planning to receive it and that Student was either completely unaware of the risk of injury, believed the risk to be a moderate or high one, or even knew that injury was substantially certain. Because reasonable scenarios exist under which Student did not have the requisite intent to commit the tort of battery, thereby triggering the exemption to the waiver of governmental immunity, the district court correctly denied the School District's motion to dismiss Erickson's complaint against it.

¶20    Affirmed.

——————————