**2021 UT 17**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

YVONNE MARTIN,
*Petitioner,*

*v.*

FRANK O. KRISTENSEN,
*Respondent.*

No. 20190797
Heard March 10, 2021
Filed May 27, 2021

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Todd M. Shaughnessy
No. 084902378

Attorneys:

Karthik Nadesan, Salt Lake City, for appellant

R. Stephen Marshall, Kevin M. Paulsen, Salt Lake City, for appellees

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE PEARCE, JUSTICE PETERSEN, and JUDGE FONNESBECK joined.

Having recused himself, JUSTICE HIMONAS does not participate herein; JUDGE ANGELA FONNESBECK sat.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 Yvonne Martin filed for divorce from Petter Kristensen in 2008. The divorce court awarded Yvonne[1] temporary possession

---

[1] We use first names to avoid confusion. No disrespect to the parties is intended.

of the marital home during the pendency of the divorce proceedings. But the home was owned by Petter's father, Frank Kristensen. Frank served Yvonne with a notice to vacate shortly after Yvonne filed for divorce. When Yvonne refused to vacate, Frank filed an unlawful detainer action against Yvonne. Yvonne claimed that the temporary possession order precluded Frank from seeking the remedies available in an unlawful detainer action. The district court disagreed, found Yvonne in unlawful detainer, and entered a judgment that included a substantial award.

¶2    The court of appeals affirmed. It held that the temporary possession orders entered in the divorce action did not foreclose the unlawful detainer remedies available to Frank by statute. We affirm. We hold that the possession orders in the divorce proceeding functioned like a temporary possession order in an unlawful detainer proceeding—they precluded the tenant's eviction from the property but did not affect the availability of statutory remedies for unlawful detainer.

I

¶3    Yvonne Martin and Petter Kristensen married in Summit County, Utah in 1995. Starting in 1999, they lived together at a home on Quicksilver Drive in Salt Lake City. Yvonne owned the home and Petter retained an interest in any proceeds from its eventual sale.

¶4    Yvonne transferred ownership of the Quicksilver Drive home to Petter's father, Frank Kristensen, in 2004. The couple continued living in the home, however, under a tenancy at will[2]—neither Yvonne nor Petter paid any rent or otherwise compensated Frank.

---

[2] *See, e.g.*, *Utah Optical Co. v. Keith*, 56 P. 155, 158 (1899) (determining that a tenancy at will existed where there was no "positive arrangement entered into between the plaintiff and his lessor, but . . . an implication of law arising from the voluntary acts and relations of the[] parties"); *see also Tenancy*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "tenancy at will" as a "tenancy in which the tenant holds possession with the landlord's consent but without fixed terms (as for duration or rent)" and noting that "[s]uch a tenancy may be terminated by either party upon fair notice").

¶5 Petter left the home in May 2008, when Yvonne received a protective order against him after she alleged that Petter had abused her. Yvonne filed for divorce soon thereafter. She then sought and received another protective order in the divorce proceeding—an order granting her the use, control, and possession of the martial home.

¶6 Frank then sought to evict Yvonne in a notice to vacate served on July 1, 2008. Yvonne did not vacate during the five-day period provided in the notice to vacate. Instead, on July 3, 2008, Yvonne filed an amended petition in the divorce proceeding. The amended petition named Frank as a defendant and asserted, among other things, that Yvonne had transferred the home to Frank under duress and that she rightfully owned the home. The next month, on August 1, 2008, Frank filed an unlawful detainer action against Yvonne.

¶7 In the divorce proceeding, Yvonne sought an order granting her possession of the home until the court divided the marital property. After months of motions and argument, the divorce court entered an order awarding Yvonne use and possession of the home pending final resolution of the divorce proceeding.

¶8 Frank remained an absent party during the pendency of the above-noted motions in the divorce proceedings. He never responded despite being named as a party in Yvonne's amended complaint. Eventually he defaulted. After the default, Frank appeared and convinced the divorce court to set aside the default. On the same day, before arguments on Yvonne's temporary possession motion, a commissioner recommended dismissing Frank from the divorce action.

¶9 The recommendation was never implemented—no order was ever entered formally dismissing Frank from the divorce action. But the parties seemingly proceeded as if he had been dismissed. Frank's counsel did not appear that day in the arguments on the motion for temporary possession. And Frank was not listed as a party to the divorce action in subsequent filings and orders.

¶10 Not long after this hearing, Yvonne filed a separate action against Frank seeking to quiet title in the home. Yvonne again claimed that she had transferred the property to Frank under duress.

¶11 Yvonne next sought and received an order that prevented Petter from evicting her during the pendency of the divorce proceedings. Frank was incapacitated in Norway at this time, with Petter acting on Frank's behalf through a power of attorney. Yvonne sought to prevent Petter from using the power of attorney to evict her.

¶12 The divorce court granted Yvonne's motion in June 2012. It entered a preliminary injunction preventing Petter from evicting Yvonne. And, perhaps contemplating that Frank might evict Yvonne when he regained capacity, the district court required Petter to "make arrangements for comparable housing for" Yvonne if she were evicted. The elements of the June 2012 order were reinforced in a subsequent order entered in September 2012. That order again enjoined Petter from interfering with Yvonne's possession and declared that Petter would be responsible for providing comparable housing if Yvonne were evicted.

¶13 Two years later, after Yvonne had requested several delays, a trial was held in the unlawful detainer and quiet title actions—which by then had been consolidated. At trial, a jury rejected Yvonne's assertion that she had transferred the property to Frank under duress. On that basis, the district court concluded that Frank was the rightful owner of the property and that Yvonne was guilty of unlawful detainer starting on July 6, 2008— five days after Frank filed the notice to vacate. *See* UTAH CODE § 78B-6-802(1)(b)(ii) (2008) (providing that "in cases of tenancies at will," tenants are guilty of unlawful detainer while they "remain[] in possession of the premises after the expiration of a notice of not less than five calendar days").

¶14 The original four proceedings—for fraudulent transfer, unlawful detainer, quiet title, and divorce—were then consolidated. After consolidation, the district court initially ordered a new trial in the unlawful detainer and quiet title actions. In so doing, the court declared that "no one may interfere with Yvonne Martin's right to stay in the . . . home during the pendency of the suit."

¶15 That order was set aside, however, after the case was transferred to a new judge. Upon transfer, the district court vacated the order for a new trial and ordered a new trial only on the damages in the unlawful detainer action. The district court affirmed the prior determination on the unlawful detainer issue. It

held that Yvonne was in unlawful detainer and Frank was entitled to possession of the property.

¶16 Shortly thereafter, on October 12, 2015, Yvonne vacated the home. Several months later, the court convened a new trial on damages in the unlawful detainer action. In that proceeding, the district court found that Yvonne was in unlawful detainer from July 6, 2008 (five days after the notice of unlawful detainer) to October 12, 2015 (when she vacated the property). Based on evidence of fair market rental value for the property, it also concluded that Frank's damages were in the amount of $224,534.10—an amount that in the court's view was required to be trebled under Utah Code section 78B-6-811(3).

¶17 The district court acknowledged the sizable nature of the treble damages award at stake. But it also noted that the unlawful detainer statute includes a "significant safety valve that is designed to protect against excessive damages for unlawful detainer"—in section 78B-6-810, which "allows a person to request a hearing or trial within 60 days and/or otherwise provides for expedited proceedings." In the district court's view, "[t]hat should have happened here but it did not." Instead, there were "machinations" that resulted in an "unreasonable delay in the resolution of th[e] case" that took "a relatively manageable amount of damages to an enormous amount of damages." And because "the statute requires" an award of treble damages, the court held that "the total amount awarded to Frank Kristensen [was] $673,602.30, plus attorney fees in an amount to be determined." The fee amount and other costs were calculated in a subsequent proceeding, and set at $227,060.96. The resulting final judgment was for $900,663.26 in Frank's favor.

¶18 Yvonne challenged that judgment on appeal, asserting that Frank had no right to seek remedies for unlawful detainer where her possession was lawful under orders awarding her temporary possession in the divorce action. The court of appeals affirmed. *See Martin v. Kristensen*, 2019 UT App 127, 450 P.3d 66. It held that the temporary possession orders did not render Yvonne's detainer lawful because (1) the divorce court's orders were not entered until after Yvonne "had unlawfully remained on the Property for nearly ten months," *id.* ¶ 37; (2) the temporary orders did not "definitively adjudicate" Frank's rights, and thus authorized Yvonne's lawful possession at most vis-à-vis Petter, *id.* ¶ 38; and (3) statutory remedies for unlawful detainer are

available notwithstanding an order of temporary occupancy, *id.* ¶ 40.

¶19 Yvonne filed a petition for certiorari, which we granted. "In reviewing the court of appeals' decision we apply the same standard of review that it would apply in reviewing the decision of the district court." *Est. of Faucheaux v. City of Provo*, 2019 UT 41, ¶ 9, 449 P.3d 112. The case primarily raises questions of law—as to the effect of temporary possession orders on the availability of remedies for unlawful detainer. And we decide those questions *de novo*, affording no deference to the lower courts' analysis. *See Manzanares v. Byington (In re Adoption of Baby B.)*, 2012 UT 35, ¶ 41, 308 P.3d 382.

## II

¶20  Yvonne does not defend the lawfulness of her possession of the Quicksilver Drive home during the ten-month period that preceded the entry of the first order authorizing temporary possession entered in the divorce action. She thus effectively concedes the first-stated basis for the court of appeals' decision— that she "unlawfully remained" on the property for a period of almost ten months. *Martin v. Kristensen*, 2019 UT App 127, ¶ 37, 450 P.3d 66. And she accordingly appears to acknowledge her liability to Frank for remedies for unlawful detainer during that period.

¶21 Yvonne does challenge the other two grounds for the court of appeals' decision, however. She claims that Frank was a party to the divorce action, participated in it, and was bound by orders entered in that case. Alternatively, she contends that the court in the divorce action had every bit as much authority over the parties as the court in the unlawful detainer action. And with that in mind, she asks us to conclude that her possession was lawful (as authorized by the divorce court) and thus cannot be a basis for remedies for unlawful detainer.

¶22 We disagree with this last point and affirm the court of appeals on the third basis for its decision without reaching the second.[3] Yvonne has a point that the divorce court's jurisdiction

_____

[3] Frank defends the district court's determination that Yvonne failed to preserve the argument that Frank was a party in the divorce action. He also contends that he was not a party in any event and should not be deemed to be bound by orders entered in

(continued . . .)

was no less than that of the unlawful detainer court. At the same time, however, neither court's power was any greater than the other's. And the remedies available to Frank in unlawful detainer were governed by the terms and conditions of the unlawful detainer provisions of the Utah Code.

¶23 The unlawful detainer provisions of the code make clear that a temporary possession order does not deprive a landlord of the right to the remedies available upon an eventual determination of unlawful detainer on final judgment. Such an order may make the tenant's possession lawful during the pendency of the unlawful detainer proceeding. But the full panoply of statutory remedies remains available to the landlord upon entry of final judgment.

¶24 A tenant in Yvonne's position is admittedly in a precarious position. If the unlawful detainer action is not resolved expeditiously, the tenant may ultimately be on the hook for an outsized award of treble damages, as occurred here. But the statutory framework provides mechanisms for avoidance of that problem—through provisions for expedited resolution of the action. *See* UTAH CODE § 78B-6-810(1). Yvonne did not avail herself of those provisions. Instead she took several steps that had the effect of dragging out the process. The large award at issue was partially a result of those steps—and is not a problem that this court can erase under the clear provisions of the governing statute.

¶25 We affirm on these grounds. We describe the basis for our decision in greater detail below. First, we outline the governing provisions of the Utah Code. Second, we explain the basis for our decision that Frank remained entitled to the statutory remedies for unlawful detainer despite the entry of temporary possession orders in the divorce action. And third, we address additional objections raised in Yvonne's briefing.

---

the divorce court. And he asks us to conclude that these questions lie beyond the grounds on which we granted certiorari review.

Yvonne disagrees on all counts. The briefing on these and related questions leads to a series of questions. We need not and do not reach them because we uphold the court of appeals on the third basis of its decision.

A

¶26 The unlawful detainer provisions of the Utah Code establish a framework "for quickly and clearly resolving conflicts over lawful possession of property between landowners and tenants." *Osguthorpe v. Wolf Mountain Resorts, L.C.*, 2010 UT 29, ¶ 22, 232 P.3d 999. They do so by defining the terms and conditions of a tenant's unlawful detainer, prescribing procedural mechanisms for disposition of unlawful detainer actions, and providing remedies available upon a determination of unlawful detainer.

¶27 "A tenant holding real property for a term less than life" may be "guilty of an unlawful detainer" in a number of ways set forth by statute. UTAH CODE § 78B-6-802(1) (2008).[4] Some of the listed grounds are implicated by remaining "in possession" of property beyond a specified date. *See, e.g., id.* § 78B-6-802(1)(a)–(c) (2008). Others concern the misuse of property, as by engaging in tortious or otherwise unlawful activity on the premises. *See id.* § 78B-6-802(1)(d)–(f) (2008).

¶28 The statute contemplates an initial "notice" by the landlord of these or other alleged grounds for unlawful detainer, *see id.* § 78B-6-805 (2008), followed by a complaint initiating an "action" for unlawful detainer, *see id.* §§ 78B-6-806, -807 (2008). It also sets forth a timeline and procedures for a response by the tenant. For some alleged grounds, the code provides that the tenant may "save the lease from forfeiture" by performing "the condition or covenant" in question "[w]ithin three calendar days after the service of the notice." *Id.* § 78B-6-802(2) (2008). For others, the code acknowledges the possibility that "the covenants and conditions of the lease violated by the lessee cannot afterwards be performed," or that "the violation cannot be brought into compliance." *Id.*

¶29 The code expressly contemplates that a tenant may be granted a right of temporary possession of the property during

---

[4] During the period when Yvonne was allegedly in unlawful detainer, the legislature recodified the unlawful detainer statute. It did not make many (or any relevant) substantive changes. *Compare* UTAH CODE § 78B-6-801–811 (2008) *with* UTAH CODE § 78B-6-801–811 (2021). We thus proceed on the assumption that the 2008 version of the code controls.

the pendency of the action. *See id.* § 78B-6-808 (2008) (providing for the execution of a possession bond by a landlord and a tenant's right to "remain in possession if he executes and files a counter bond"); *id.* § 78B-6-810(2)(b)(i) (2008) (providing for a determination of "who has the right of occupancy during the litigation's pendency" in an action for nonpayment of rent). But it also prescribes remedies available to a landlord upon an eventual determination of unlawful detainer. *See id.* § 78B-6-811 (2008). And the statutory scheme makes clear that the landlord's remedies are not suspended or affected by an order authorizing a tenant's temporary possession.

¶30 If the court finds that the tenant was in unlawful detainer upon entry of final judgment, "judgment shall be entered against the defendant for the rent, for three times the amount of the damages assessed [by the court] . . . and for reasonable attorney fees." *Id.* § 78B-6-811(3) (2008). The award of such remedies is mandatory. And their availability is unaffected by the entry of a prior order authorizing the tenant's temporary possession of the property. This is clear from the structure of the statute—the fact that such orders are in effect "during the litigation's pendency," *id.* § 78B-6-810(2)(b)(i) (2008), and contemplate "further proceedings" on issues that "remain to be adjudicated between the parties" at trial, *id.* § 78B-6-808(6) (2008).[5]

¶31 The statutory proceedings are to be expedited on terms and conditions set forth in the code. In actions "in which the tenant remains in possession of the property," the court is to "expedite" the disposition of all motions and "shall begin the trial within 60 days after the day on which the complaint is served, unless the parties agree otherwise." *Id.* § 78B-6-810(1) (2008). "In an action for unlawful detainer where the claim is for

---

[5] A tenant who is granted a right of temporary occupancy is thus in a position parallel to that of an applicant for a preliminary injunction. In both circumstances, the temporary order imposes a status quo hold on the parties' legal rights. In both settings, however, the party seeking that hold is still on the hook for any damages that accrue if the order is later found to have been wrongfully entered. *See Mountain States Tel. & Tel. Co. v. Atkin, Wright & Miles, Chartered*, 681 P.2d 1258, 1262 (Utah 1984) (noting the availability of damages "if it is finally determined" that an applicant was not entitled to a preliminary injunction).

nonpayment of rent," the court is also required to "hold an evidentiary hearing, upon request of either party, within ten days after the day on which the defendant files the defendant's answer" to "determine who has the right of occupancy during the litigation's pendency." *Id.* § 78B-6-810(2) (2008). The above-noted possession bond proceeding is also subject to expedited time constraints. If the landlord files a possession bond, the tenant is entitled to demand a hearing "within three days of being served with notice of the filing of plaintiff's possession bond" and has a right to "a hearing within three days of the defendant's demand." *Id.* § 78B-6-808(4)(c) (2008).

B

¶32 Yvonne has a point that her possession of the Quicksilver Drive home was "lawful" in the sense that her occupancy had been authorized in orders entered by the divorce court. But that alone does not tell us that Frank was thereby foreclosed from the statutory remedies available upon a final judgment in the unlawful detainer action. The divorce court's jurisdiction was no less than that of the unlawful detainer court. But it was likewise no greater. And the effect of a temporary occupancy order on the remedies for unlawful detainer is prescribed by the statutory provisions that govern such proceedings.

¶33 Those provisions make clear that an order of temporary occupancy has a limited effect. It gives the tenant a temporary right of occupancy "during the litigation's pendency." *See id.* § 78B-6-810(2)(b) (2008). But such a right of occupancy is tentative and conditional. A temporary order contemplates "further proceedings" that "remain to be adjudicated between the parties" at trial, *id.* § 78B-6-808(6) (2008), including proceedings on the merits of the landlord's allegation of unlawful detainer.

¶34 The alleged unlawful detainer at issue here arose under a tenancy at will—a lease for an indefinite term without specification as to duration or rent.[6] By statute, unlawful detainer

---

[6] *See Buchanan v. Crites*, 150 P.2d 100, 102 (Utah 1944) (determining that tenant was no longer a tenant at will once "it could [not] be said that the [tenant] was in possession with the consent of the [landlord]"); *Carteri v. Roberts*, 73 P. 818, 819 (Cal. 1903) (defining a "tenant at will" as someone "who enters upon land by permission of the owner" without a contract); *Coinmach*

(continued . . .)

for such a tenancy is established if the tenant "remains in possession" of property "after the expiration of a notice of not less than five calendar days." *Id.* § 78B-6-802(1)(b)(ii) (2008). Frank alleged that Yvonne was in unlawful detainer under this provision from July 6, 2008 (five days after the notice of unlawful detainer) to October 12, 2015 (when Yvonne eventually vacated the premises). The district court agreed. In the consolidated trial on the quiet title and unlawful detainer actions, a jury rejected Yvonne's assertion that she had executed a quitclaim deed on the property under duress, and the district court concluded that Yvonne had thus been in unlawful detainer since July 2008.

¶35 The court of appeals affirmed that decision and we likewise affirm. The temporary occupancy orders entered in the divorce action had no greater effect than a temporary occupancy order entered in an unlawful detainer proceeding. And the terms of the unlawful detainer provisions of the code make clear that a temporary occupancy order does not foreclose the availability of statutory remedies for unlawful detainer upon entry of final judgment.

¶36 The temporary possession orders made Yvonne's possession lawful in the sense of protecting her from eviction. But that is no different from a temporary possession order entered in an unlawful detainer action. And such a temporary order does not preclude an unlawful detainer action—or foreclose the remedies available upon final judgment in such action. Such orders simply preserve the status quo pending disposition of the unlawful detainer proceeding. Unless and until a final judgment is entered in such proceeding, the tenant remains on the hook for the remedies available to the landlord if the landlord succeeds in securing a final judgment in its favor.

¶37 Yvonne assumed a risk when she remained in possession of the property during the pendency of the quiet title and unlawful detainer proceedings. If she had prevailed in persuading a jury that her quitclaim deed had been entered under duress, presumably she would have established that she was not in

---

*Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 915 (Tex. 2013) (explaining that "tenants at will remain in possession with their landlords' consent, their possession is lawful, but it is for no fixed term, and the landlords can put them out of possession at any time").

"unlawful detainer" as a tenant who "remain[ed] in possession" of a landlord's property. *See id.* But she failed to succeed on that claim. And her gamble turned out to be a bad one. As a result of the extensive time it took to resolve the quiet title and unlawful detainer issues, Yvonne ended up owing over $900,000 in damages—an amount that included fair market rental value as damages (trebled under the statute) as well as costs and attorney fees.

¶38 Such an award may seem unduly large at this juncture. But the amount was the inevitable result of delay under a statutory scheme that calls for treble damages. Much of the delay was Yvonne's own doing; at very least, she did not choose to expedite the proceedings. And the ultimate disposition of Yvonne's duress claim left the district court with no options.

¶39 Once title was quieted in Frank's name, the writing was on the wall for the unlawful detainer proceeding. Frank's lawful title was conclusively established. And that meant that Yvonne had "remain[ed] in possession" of the premises of Frank's home under a tenancy at will "after the expiration of" Frank's five-day notice in July 2008. *See id.* Yvonne could have vacated the home within five days. She could have sought expedited proceedings on the unlawful detainer proceedings, as provided by statute. But she did neither. And the result was a very large award that included treble damages and attorney fees.

¶40 That award may seem lamentable. But it cannot be avoided on the ground that Yvonne's possession of the Quicksilver Drive home was lawful under temporary possession orders.

C

¶41 Yvonne advances two sets of challenges to the above framework for disposition. First, she identifies circumstances that purportedly would foreclose "continuing damages for unlawful detainer," which she cites as grounds for concluding that Frank's damages should likewise be foreclosed. Second, she advances legal and equitable grounds for precluding the accumulation of treble damages in a case like this one. We reject both sets of arguments for reasons explained below.

1

¶42 Yvonne contends that "[t]here are any number of events that should terminate continuing damages for unlawful detainer."

And she asks us to analogize this case to the hypothetical circumstances she identifies. We accept the premises of Yvonne's argument. But we find the cited circumstances distinguishable from the case at hand.

¶43 Yvonne first posits a circumstance in which a tenant at will under a notice of unlawful detainer "enter[s] into a lease agreement with the property owner that allowed him to stay in the property." The new lease, in her view, could "transform" the tenant's "possession to a lawful one" that terminates liability for unlawful detainer. And "if the term of the new lease started retroactively," Yvonne asserts that "unlawful detainer liability should be eliminated completely."

¶44 Yvonne also imagines a case in which the landlord "withdraw[s]" the notice of unlawful detainer and "authorizes the tenant to remain in possession." She asserts that such "action would restore the tenant to lawful possession and should render the tenant's initial unlawful detainer liability void ab initio."

¶45 Yvonne seeks to analogize her case to these hypothetical circumstances. In this case and in the cited hypotheticals, Yvonne claims that the tenant has "gained lawful possession." And in all of these circumstances, she asserts that it is "both unjust and nonsensical" to allow the tenant to "continue to accrue" wrongful detainer damages "so long as he remained in possession."

¶46 We assume for the sake of argument that unlawful detainer damages would not accrue in the cited hypotheticals. But the hypotheticals are easily distinguished. And the distinctions highlight a core defect in Yvonne's position.

¶47 In the event of a new, retroactive lease, it can no longer be said that the tenant "remain[ed] in possession" of the landlord's property "after" expiration of the five-day notice. *See id*. The new lease reestablishes the tenancy. And its retroactive application means that there never was an unlawful detainer. That is not the case here. The temporary possession orders did not reestablish the tenancy at will. They did not establish (retroactively or otherwise) that Yvonne was never in unlawful detainer after expiration of the five-day notice. They simply put a temporary hold on eviction, subject to the availability of unlawful detainer remedies upon entry of final judgment in favor of the landlord.

¶48 The landlord's withdrawal of the notice of unlawful detainer is similarly distinguishable. An unlawful detainer plaintiff is certainly entitled to waive the right to assert damages

for unlawful detainer. Such a waiver is enforceable, and forecloses the right to seek statutory remedies. That did not happen here. And Yvonne's hypotheticals thus provide no basis for a decision in her favor.

2

¶49  Yvonne next challenges the accrual of treble damages against her. She contends that the governing statutes do not clearly provide for "treble damages during a period of court-authorized possession." And she advances "public policy and equity" grounds for foreclosing the accumulation of treble damages in a case in which the operative possession orders did not provide "notice" of Yvonne's "continued liability for treble damages."

¶50 We find no basis for these arguments in the operative terms of the code. By statute, the factfinder is required to "assess the damages resulting to the plaintiff from . . . unlawful detainer." *Id.* § 78B-6-811(2) (2008). In an action under a tenancy at will, the plaintiff's damages are primarily measured by the fair market rental value of the property. *See, e.g.*, *Valley Lane Corp. v. Bowen*, 592 P.2d 589, 592 (Utah 1979). Once such damages are calculated, "[t]he judgment shall be entered against the defendant" for "three times the amount of the damages" assessed by the court and for a "reasonable attorney fee[]." Utah Code § 78B-6-811(3) (2008). The entry of judgment is mandatory upon a determination of unlawful detainer. And the judgment must include an award of treble damages. The statute leaves no room for a court-made exception.

¶51 These remedies provisions themselves may not speak directly to the effect of a temporary possession order. But temporary orders do not affect the eventual availability of any statutory remedies—for reasons set forth in Parts II.A. & B. above. And we reject Yvonne's position on that basis.

¶52 Perhaps it would have been ideal for the temporary possession orders to specify their limited effect—to make clear that Yvonne could remain on the hook for the statutory remedies for unlawful detainer. But hindsight is 20/20 and judges aren't always in a position to anticipate the ideal terms of an entered order. Yvonne was responsible for assessing the effect of the orders of temporary possession under our law. And we are in no position to deprive Frank of the remedies available to him by statute.

¶53 We reject Yvonne's invocation of "public policy and equity" on that same basis. Treble damages, in a sense, may seem a "severe remedy." *Osguthorpe*, 2010 UT 29, ¶ 23 (quoting *Sovereen v. Meadows*, 595 P.2d 852, 853 (Utah 1979)) (characterizing them as such, while noting that they are necessary to hasten a quick resolution of unlawful detainer actions). But they are the remedy provided by statute. And our court has no equitable power to override that remedy on public policy grounds.

### III

¶54 A landlord who establishes unlawful detainer is entitled to the remedies prescribed by statute, including treble damages. Such remedies are not foreclosed by an order authorizing temporary possession, whether entered in the unlawful detention action itself or in a related proceeding.

¶55 This holding may appear to have produced an outsized judgment in this case. But the size of the judgment here was the product of the delay in the proceedings, which was initiated at least in part by the tenant. And we have no authority to override the statutorily prescribed remedies in any event.

———————