2021 UT App 118

## THE UTAH COURT OF APPEALS

DANIEL T. THORP,
Appellant,
*v.*
TIMOTHY P. CHARLWOOD,
Appellee.

Opinion
No. 20190981-CA
Filed November 4, 2021

Third District Court, Silver Summit Department
The Honorable Kent R. Holmberg
The Honorable Richard Mrazik
No. 190500272

Paul W. Jones and William B. Ingram,
Attorneys for Appellant

Paxton R. Guymon and Lauren P. Johnson,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

ORME, Judge:

¶1     Timothy P. Charlwood purchased a house, remodeled it, and sold it to Daniel T. Thorp. A full ten years later, Thorp began noticing several issues with the property. Most significantly, the deck appeared to be structurally failing. Following an inspection, a contractor determined that the deck was constructed in a negligent manner.

¶2     Thorp sued Charlwood, alleging defective construction, negligent misrepresentation, and fraudulent misrepresentation. The district court dismissed the complaint on the ground that

the economic loss rule barred Thorp's claims. The court later awarded attorney fees to Charlwood. Thorp appeals, and we affirm.

BACKGROUND[1]

¶3      In February 2005, Charlwood purchased property located in Park City, Utah (the Property). Almost immediately, "Charlwood began a construction project of completely remodeling and expanding the square footage of the home on the Property." After completing the project, Charlwood listed the Property for sale. One listing stated, "This beautiful log home was originally built in 1991 and has been completely remodeled and expanded in 2005–2006."

¶4      In April 2007, Thorp made an offer to purchase the Property. Charlwood accepted the offer, and the two entered into a Real Estate Purchase Agreement (the REPC). The REPC expressly incorporated a Seller's Property Condition Disclosure form (the Seller's Disclosures) but indicated that Thorp's "obligation to purchase under this Contract . . . IS NOT conditioned upon [his] approval of the content of all the Seller['s] Disclosures."

¶5      The Seller's Disclosures provided that it was a "legally binding document" and that

---

1. "On appeal from a motion to dismiss under Utah Rule of Civil Procedure 12(b)(6), we review the facts only as they are alleged in the complaint. As a result, we accept the factual allegations in the complaint as true and consider all reasonable inferences to be drawn from those facts in a light most favorable to the plaintiff." *Erickson v. Canyons School Dist.*, 2020 UT App 91, n.1, 467 P.3d 917 (quotation simplified).

> SELLER IS OBLIGATED UNDER LAW TO DISCLOSE TO BUYERS DEFECTS IN THE PROPERTY KNOWN TO SELLER THAT MATERIALLY AND ADVERSELY AFFECT THE VALUE OF THE PROPERTY THAT CANNOT BE DISCOVERED BY A REASONABLE INSPECTION BY AN ORDINARY PRUDENT BUYER.

The Seller's Disclosures required Charlwood to disclose whether he was "aware of any past or present" problems with, among other things, the following: the roof, including repairs; interior features, including flooring; exterior features; termites, dry rot, and pests; additions and remodels; structural items and soils; use of the Property; other moisture conditions; and "violations of any local, state, or federal law or regulation." Other than indicating that he had rebuilt the roof in 2005 and engaged in a "complete remodel" of the Property, Charlwood checked "No" to each question related to the aforementioned categories. The Seller's Disclosures also indicated that by signing, Charlwood "verifies that [he] has prepared this disclosure form and that the information contained herein is accurate and complete to the best of [his] actual knowledge as of the date signed . . . below."

¶6    In May 2007, the parties closed on the Property, and Thorp took possession. A little over ten years later, toward the end of 2017, Thorp noticed that "the deck on the side of the Property was drastically sloped and appeared to be failing structurally." Thorp contacted several contractors, who, based on their visual inspections, "speculated that there appeared to be an issue with the footings that was causing them to sink and thereby causing additional damage to the deck and the structure of the home." But the contractors indicated that they could not know for sure until they removed the deck. Following the deck's removal, a contractor's investigation "revealed that the construction of the deck was

completed in a defective and negligent way," that the "conditions were hidden/latent," and that the conditions "were only discovered because the materials were removed to remedy the problem."

¶7    Thorp also discovered additional problems with the Property, including "incorrect pitching of the roof over the deck for water drainage, roof vents of inadequate size for the roof, flagstone facing on the exterior of the home that overlaps and covers logs (masonry to log contact creating additional rot), negligent electrical work, collapsed fireplace chimney lining where the old roof and added roofline meet, and the 130-yard added driveway sliding off the hill."

¶8    Thorp sued Charlwood in 2019, asserting three causes of action: defective construction, negligent misrepresentation, and fraudulent misrepresentation. In his complaint, Thorp alleged that "Charlwood is a real estate developer" and that he "reports through an online profile . . . that he has been a professional real estate developer since January 1984." He further alleged that Charlwood did not obtain a building permit for the project, that he never obtained a certificate of substantial completion or a certificate of occupancy, and that he never used the Property as his principal residence. He also asserted that "[b]ecause Charlwood was the owner of the Property and because he performed and was responsible for the Construction Project, [his] representations [in] the Seller's Disclosures were known or should have been known to Charlwood as being untrue, false, or materially inaccurate at the time he made them to Thorp." Finally, Thorp alleged that "Charlwood fraudulently concealed the above defects and negligence from the Construction Project by making the representations in the Seller's Disclosures."

¶9 Charlwood moved to dismiss the complaint, arguing that the economic loss rule barred Thorp's claims.[2] Charlwood's motion also included a request for attorney fees.

¶10 In opposing the motion, Thorp argued, among other things, that the economic loss rule did not apply because there was "no contract for construction and design work made between the parties," and therefore "[t]he duty at issue is a legal duty that does not arise from any contract." Thorp further argued that the economic loss rule did not bar his claims because, as he put it, "the Seller's Disclosures were for the express purpose of Charlwood complying with his independent duty as a contractor-seller," meaning his "duties were not *entirely* subsumed with the REPC." Next, pointing to the provision in the REPC that stated Thorp's "obligation to purchase under this Contract . . . IS NOT conditioned upon [his] approval of the content of the Seller's Disclosures," Thorp argued that a breach of contract claim was not available to him. Therefore, the application of the economic loss rule to his claims would deprive him of "a remedy by due course of law" in violation of the Open Courts Clause of the Utah Constitution. *See* Utah Const. art. I, § 11.

¶11 Following a hearing, the district court issued a decision (the Memorandum Decision) granting Charlwood's "Motion to Dismiss in the entirety." The court determined that the economic loss rule barred Thorp's claims because they were "not premised upon any independent duty that exists apart from the REPC."

---

2. "The economic loss rule is a judicially created doctrine" that "prevents recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute." *Reighard v. Yates*, 2012 UT 45, ¶¶ 14, 19, 285 P.3d 1168 (quotation simplified).

The court further ruled "that there is no legal or factual basis to support [Thorp's] theory that [Charlwood] assumed the role of a contractor-seller and the potentially heightened duties that go along with this role." In support of this conclusion, the court noted that "the Verified Complaint does not allege that [Charlwood] was the developer or original builder of the home." The court further pointed to Thorp's acknowledgement that there was no contract between the parties for construction services and stated that "[w]hile [Charlwood] is alleged to have developed other properties, his role in these other transactions has no bearing on the transaction involving [Thorp] and does not mean that [Charlwood] acted as a 'contractor-seller' in this instance." Next, addressing Thorp's argument that a claim for breach of contract was unavailable to him, the court noted that Thorp's "unconditional obligation to purchase the [Property] did not trigger the application of common law duties, particularly where such duties would directly contradict the terms of the REPC." Lastly, the court held that Utah Code section 78B-4-513 barred Thorp's defective construction claim because it "is undisputed that there is no contract between [the parties] that could support the claim." The Memorandum Decision concluded by stating that it "will stand as the Order of the Court and no further Order is required." Although the issue was briefed by the parties, the court did not address Charlwood's request for attorney fees in the Memorandum Decision.

¶12   Two days after the district court issued the Memorandum Decision, Thorp filed a notice of appeal. A week later, Charlwood filed a motion seeking an award of attorney fees in accordance with rule 73 of the Utah Rules of Civil Procedure. Among other things, Charlwood based his request on the REPC, which provides that "[i]n the event of litigation or binding arbitration to enforce this Contract, the prevailing party shall be entitled to costs and reasonable attorney fees."

¶13 Following a hearing, the court granted Charlwood's motion in part, awarding half the attorney fees requested.[3] The court ruled that its silence on Charlwood's attorney fees request in the Memorandum Decision was "not a denial of [Charlwood's] request for attorney fees." The court further held that Charlwood's "assertion of the affirmative defense of the economic loss doctrine is an action 'to enforce' the [REPC] . . . and, therefore, [Charlwood] is entitled to recover attorney fees related to that defense." Based on this, the court awarded half the attorney fees Charlwood incurred in bringing his motion to dismiss and all the attorney fees associated with his rule 73 motion.

¶14 Following that ruling, Thorp properly amended his notice of appeal to include the court's award of attorney fees.

## ISSUES AND STANDARDS OF REVIEW

¶15 Thorp challenges the district court's dismissal of his complaint. "The propriety of a trial court's decision to grant or deny a motion to dismiss under rule 12(b)(6) of the Utah Rules of Civil Procedure is a question of law that we review for correctness." *Erickson v. Canyons School Dist.*, 2020 UT App 91, ¶ 6, 467 P.3d 917 (quotation simplified). But because "dismissal of a complaint is proper only if it is clear from the allegations that the plaintiff would not be entitled to relief under the set of facts alleged or under any facts it could prove to support its claim, on review we accept all facts alleged as true, and indulge all reasonable inferences in favor of the plaintiff." *Id.* (quotation simplified).

---

3. A different judge ruled on Charlwood's motion for attorney fees. Thorp explains that this is "because of the Third District Court's rotation schedule" in Summit County.

¶16 Thorp next argues that the court's dismissal of his claims violated the Open Courts Clause of the Utah Constitution. He claims the dismissal denied him a "remedy by due course of law." Utah Const. art. I, § 11. "Constitutional issues are questions of law that we review for correctness." *Ho v. Department of Com.*, 2020 UT App 37, ¶ 13, 462 P.3d 808 (quotation simplified).

¶17 Lastly, Thorp challenges the court's award of attorney fees to Charlwood. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Martin v. Kristensen*, 2019 UT App 127, ¶ 31, 450 P.3d 66 (quotation simplified), *aff'd*, 2021 UT 17, 489 P.3d 198. Likewise, "whether the [court's] findings are sufficient to support the award is a question of law reviewed for correctness." *Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998). But the "calculation of reasonable attorney fees is in the sound discretion of the trial court and will not be overturned in the absence of a showing of a clear abuse of discretion." *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988) (quotation simplified).

ANALYSIS

I. Economic Loss Rule

¶18 "The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care." *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs.*, 2001 UT 54, ¶ 32, 28 P.3d 669. Put differently, "[t]he economic loss rule prevents recovery of economic

damages under a theory of tort liability when a contract covers the subject matter of the dispute."[4] *Reighard v. Yates*, 2012 UT 45, ¶ 14, 285 P.3d 1168. A principal reason behind the rule is that "when a party is merely suing to recover the benefit of its contractual bargain, there is no inherent unfairness in limiting that party to a breach-of-contract claim." *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 21, 435 P.3d 193 (quotation simplified). To the contrary, "it seems problematic for a court to make a better contract for [the parties] than the one they negotiated—by importing tort remedies into the deal." *Id.*

¶19 The initial inquiry under the economic loss rule is "whether a duty exists independent of any contractual obligations between the parties." *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 27, 221 P.3d 234 (quotation simplified). If a tort claim is based on a legal duty that is independent of the contract, the economic loss rule will not bar the claim. *Id.* But "[i]f the tort alleges a breach of a duty that the contract itself imposes, then the claim is barred; the plaintiff can sue only for contract-based remedies." *KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, ¶ 71, 436 P.3d 151.

¶20 Although originally a judicially created doctrine, *see SME Indus.*, 2001 UT 54, ¶ 32, in 2008, our Legislature codified the economic loss rule in Utah Code section 78B-4-513, *see Hayes v. Intermountain GeoEnvironmental Services Inc.*, 2019 UT App 112,

---

4. A separate branch of the economic loss rule "bars recovery of economic losses in negligence actions unless the plaintiff can show physical damage to other property or bodily injury." *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 12, 435 P.3d 193 (quotation simplified). Because this branch applies where there is no contract between the parties, *see id.*, it is inapplicable here, and we do not discuss it further.

¶ 8, 446 P.3d 594, *cert. granted*, 455 P.3d 1061 (Utah 2019). The statute limits actions for defective design or construction to breach of contract claims brought "by a person in privity of contract with the original contractor, architect, engineer, or the real estate developer."[5] Utah Code Ann. § 78B-4-513(1), (4) (LexisNexis 2018). The common law version of the rule "continues to apply in situations that are beyond the scope of the statute." *Hayes*, 2019 UT App 112, ¶ 8.

¶21    Thorp argues the district court erred in ruling that the economic loss rule barred his claims for negligent misrepresentation and fraudulent misrepresentation.[6] Regarding

---

5. The statute exempts from this limitation actions for defective design or construction that "include damage to other property or physical personal injury if the damage or injury is caused by the defective design or construction." Utah Code Ann. § 78B-4-513(2) (LexisNexis 2018).

6. In his principal brief, Thorp does not challenge the district court's dismissal of his claim for defective construction. It is not until his reply brief that Thorp argues that the court erred in concluding that the statutory version of the economic loss rule barred that claim on the rationale that it was "undisputed that there is no contract between [the parties] that could support the claim for defective construction." *See id.* § 78B-4-513(4) ("[A]n action for defective design or construction may be brought only by a person in privity of contract with the original contractor, architect, engineer, or the real estate developer."). Thorp argues that although "he does not have a contract for design or construction services with Charlwood," he "does have a privity of contract with Charlwood through the REPC." But because Thorp raises this argument for the first time in his reply brief, we do not address it further. *See Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 ("Issues raised by an appellant in the reply brief that

(continued…)

his negligent misrepresentation claim, he contends that Charlwood owed common law duties that were "independent of the contracts that buyers and sellers make." *See Smith v. Frandsen*, 2004 UT 55, ¶ 11, 94 P.3d 919 ("[A] duty to disclose is a necessary element of the tort of negligent misrepresentation."). He also contends that the rule does not apply to his claim for fraudulent misrepresentation on the theory that this claim does not completely overlap with a breach of contract claim.

A.     Negligent Misrepresentation

¶22     The economic loss rule applies where a duty exists that overlaps with those contemplated in a contract. *Reighard v. Yates*, 2012 UT 45, ¶ 21, 285 P.3d 1168. *See HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 10, 435 P.3d 193 ("[W]here the party's tort claim is a mere duplication of its breach of contract claim, there is no exception to the economic loss rule. The tort claim is barred."); *KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, ¶ 76, 436 P.3d 151 ("[T]ort claims . . . are barred by the economic loss rule if those claims are grounded in the same duties that exist by virtue of the parties' contract."). Conversely, "when a duty exists that does not overlap with those contemplated in a contract, the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule." *Reighard*, 2012 UT 45, ¶ 21 (quotation simplified). Thorp contends that Charlwood owed two duties that were independent of the REPC.

_____

(…continued)
were not presented in the opening brief are considered waived and will not be considered by the appellate court.") (quotation simplified).

1.      Duty of Sellers of Real Property

¶23    The first common law duty independent of the REPC that Thorp contends Charlwood owed him was the duty sellers of real property owe "to disclose material known defects that cannot be discovered by a reasonable inspection by an ordinary prudent buyer." *See Hermansen v. Tasulis*, 2002 UT 52, ¶ 25, 48 P.3d 235. But the Seller's Disclosures, which the REPC expressly incorporated, thereby making them part of the contract, specifically imposed a duty to "disclose to buyers defects in the property known to seller that materially and adversely affect the value of the property that cannot be discovered by a reasonable inspection by an ordinary prudent buyer." This language mirrors the common law tort duty almost verbatim. *See id.* Furthermore, in his complaint, Thorp cited several sections of the Seller's Disclosures pertaining to the alleged defects in the Property and stated that "the above representations from the Seller's Disclosures were known or should have been known to Charlwood as being untrue, false, or materially inaccurate at the time he made them to Thorp." And although more directly pertaining to his claim of fraudulent misrepresentation, Thorp alleged that "Charlwood fraudulently concealed the above defects and negligence from the Construct[ion] Project by making the representations in the Seller's Disclosures." Charlwood's alleged breaches of the Seller's Disclosures were therefore central to Thorp's complaint. *See Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶ 53, 70 P.3d 1 ("The fact that the exact same conduct is described in both the contract and tort claims, and the exact same facts and circumstances are at play, is indicative of the overlapping duties in this case.").

¶24    Thorp argues that "[t]he REPC does not expressly warrant the specific conditions of the Property that are the subject of the Complaint, namely footings, posts, and support for the deck and

roof."[7] But this argument directly contradicts Thorp's complaint, in which Thorp asserted that the Seller's Disclosures required Charlwood to disclose known defects related to the roof, "exterior elements of the Property," structural support, and other problems such as dry rot and water damage. And even assuming the common law duty extends to building permits (or lack thereof), *cf. Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 44, 221 P.3d 234 ("No common-law duty exists that creates a duty to conform to building codes."), the Seller's Disclosures also required Charlwood to disclose any known "past or present violations of any local, state, or federal law or regulation." We therefore conclude that Charlwood's contractual duty to disclose known defects on the Property completely overlapped with his common law duty to do the same. Thus, the economic loss rule bars Thorp from pursuing this claim via a tort theory.

---

7. In support of this argument, Thorp points to a provision in the Seller's Disclosures stating that it "is not a warranty of any kind" and a provision in the REPC in which Thorp waived his right to cancel the purchase based on, among other things, his disapproval of the content of the Seller's Disclosures. But the common law duty requires only that the seller disclose known material defects that a buyer could not uncover through a reasonable inspection—it does not implicate warranties. *See Hermansen v. Tasulis*, 2002 UT 52, ¶ 25, 48 P.3d 235. And concerning Thorp's agreement to purchase the Property regardless of what the Seller's Disclosures revealed, Thorp cites no authority to support the assertion that common law duties at odds with the terms of a contract may save a party from a bad bargain. To the contrary, one of the purposes of the economic loss rule is to prevent a party from seeking to gain a better bargain than the one the party negotiated "by importing tort remedies into the deal." *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 21, 435 P.3d 193.

2.    Duty of Developer-Sellers and Contractor-Sellers

¶25    The second duty Thorp asserts Charlwood owed was the duty developer- and contractor-sellers have "to disclose information known to [them] concerning real property . . . when that information is material to the condition of the property purchased by the buyer." *See Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶ 35, 143 P.3d 283. This duty exists because "a contractor-seller possesses a high degree of knowledge and expertise compared to a home buyer" that "leads the home purchaser to rely on the contractor-seller's expertise." *Davencourt*, 2009 UT 65, ¶ 30 (quotation simplified).

¶26    Thorp contends that in rejecting this argument, the district court erroneously concluded that "the Verified Complaint does not allege that [Charlwood] was the developer or original builder of the home." He points to his complaint where he alleged that Charlwood "is a real estate developer," that Charlwood "did not occupy the Property as his principal residence during any time that he owned the Property," and that Charlwood "reports through an online profile . . . that he has been a professional real estate developer since January 1984." Based on these allegations, Thorp asserts that he is entitled to a reasonable inference that Charlwood was the developer of the Property and therefore owed him this duty. *See Erickson v. Canyons School Dist.*, 2020 UT App 91, n.1, 467 P.3d 917 (stating that in reviewing a motion to dismiss under rule 12(b)(6) of the Utah Rules of Civil Procedure, courts "accept the factual allegations in the complaint as true and consider all reasonable inferences to be drawn from those facts in a light most favorable to the plaintiff") (quotation simplified).

¶27    But the complaint recognized that Charlwood was not the original builder of the home on the Property. The complaint stated that the home was originally built in 1991 and that soon after purchasing the Property *some fourteen years later*,

Charlwood began "remodeling and expanding the square footage of the home on the Property." Thorp further acknowledged, both in the district court and on appeal, that no contract for construction services existed between the parties. Given these facts, Thorp has not met his burden of persuasion that the terms "developer-seller" and "contractor-seller," as contemplated by this common law duty, apply to those who undertake to remodel and sell an already-existing home.

¶28  In support of his assertion that Charlwood was the developer of the Property, Thorp cites *Loveland v. Orem City Corp.*, 746 P.2d 763 (Utah 1987); *Yazd*, 2006 UT 47; and *Davencourt*, 2009 UT 65. But those cases do not establish that a developer- or contractor-seller's disclosure duties apply to remodeling projects. In *Loveland*, our Supreme Court determined that "where land is subdivided and sold for the purpose of *constructing* residential dwelling houses," the developer owes a duty to "disclose to his purchaser any condition which he knows or reasonably ought to know makes the subdivided lots unsuitable for such residential building." 746 P.2d at 769 (emphasis added) (quotation otherwise simplified). In *Yazd*, the Court held that a developer-contractor of *new construction* owed a duty to disclose to the purchaser known material information regarding unsuitable soil conditions. 2006 UT 47, ¶¶ 30, 35. The Court reasoned that "[m]odern home construction requires a high degree of knowledge and expertise" and "that the disparity in skill and knowledge between home buyers and builder-contractors leads buyers to rely on the builder-contractor's expertise." *Id.* ¶ 24. Finally, *Davencourt* also involved new construction in which a developer contracted with a builder to construct homes that the developer then sold. 2009 UT 65, ¶¶ 2–3, 33. In the absence of privity of contract between the builder and the homeowners' association, the Court held that the builder was not liable for negligent construction because the parties "lack[ed] the legal relationship necessary to find a duty." *Id.* ¶ 47.

¶29   In sum, each of these cases imposed a developer- or contractor-seller duty on those involved in the new construction of residential homes. It is doubtful that the heightened duty extends to those undertaking remodeling and improvement of an existing home because it is unlikely that buyers of remodeled homes rely on the seller's skill to the same degree as with new construction. In any event, Thorp does not meaningfully address this issue. Instead, he largely assumes that Charlwood's remodeling of the Property qualified him as a developer- or contractor-seller for purposes of the duty. Accordingly, he has not met his burden of persuasion on this question nor demonstrated reversible error on the part of the district court. *See* Utah R. App. P. 24(a)(8).

B.    Fraudulent Misrepresentation

¶30   Fraud-based torts are also subject to the economic loss rule. *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶¶ 13, 16, 435 P.3d 193. "If the 'bad acts' (even intentional ones) are covered by a contract, they remain in the realm of contract law." *Id.* ¶ 20. Accordingly, the economic loss rule bars even intentional torts where the claim "overlaps completely with a contract claim" because a breach of contract claim would allow the wronged party to recover for the same conduct. *Id.* ¶¶ 9–10.

¶31   Thorp asserts that the economic loss rule does not bar his claim for fraudulent misrepresentation because he "does not plead an overlapping contract claim in the Verified Complaint that is 'entirely duplicative' of his tort claims. Rather, [he] pleads claims that arise from duties independent of the REPC (or any other contract)." Because we concluded above that the duties he pleaded were duplicative of the REPC, we conclude that Thorp's fraudulent misrepresentation claim also "overlaps completely with a contract claim" and is accordingly barred by the economic loss rule. *See id.* ¶ 9.

## II. Open Courts Clause

¶32    The Open Courts Clause of the Utah Constitution provides that individuals "shall have remedy by due course of law" for injuries sustained to their "person, property, or reputation." Utah Const. art. I, § 11. Our Supreme Court has articulated a three-part test to determine whether a statute violates this clause by abrogating legal remedies recognized at common law. First, courts must determine "whether the legislature has abrogated a cause of action." *Waite v. Utah Labor Comm'n*, 2017 UT 86, ¶ 19, 416 P.3d 635. If so, courts must next determine "whether the law provides an injured person an effective and reasonable alternative remedy." *Id.* (quotation simplified). If no such remedy exists, "abrogation of the remedy or cause of action may be justified only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective." *Id.* (quotation simplified).

¶33    Despite this rather specific construct, "Thorp is not taking a position on constitutionality of any statute potentially at issue in this case." Rather, he asserts that the district court's application of the common law economic loss rule to bar his tort claims violated the Open Courts Clause because he was denied a "remedy by due course of law." He argues that because he "has valid tort claims as pled in the Verified Complaint that are based on legal duties that are not based in contract," he was left without an "effective and reasonable alternative remedy."

¶34    Without a challenge to a specific statute, we are unconvinced that the Open Courts Clause applies to the case before us. But even assuming it does, as discussed in more detail in section I above, the legal duties to which Thorp refers completely overlapped with those the REPC imposed, thereby triggering the application of the economic loss rule. And the "economic loss rule prevents recovery of economic damages

under a theory of tort liability *when a contract covers the subject matter of the dispute.*" *Reighard v. Yates*, 2012 UT 45, ¶ 14, 285 P.3d 1168 (emphasis added). Accordingly, there was no violation of the Open Courts Clause because an adequate alternative remedy existed in the form of a breach of contract claim.

¶35 Thorp contends that "he does not possess a breach of contract claim" because "the REPC was expressly not conditioned upon Thorp's approval of the Seller's Disclosures." Specifically, the REPC stated that Thorp's "obligation to purchase under this Contract . . . IS NOT conditioned upon [his] approval of the content of all the Seller's Disclosures." But even assuming that this provision amounted to a waiver of a breach of contract claim based on Charlwood's allegedly false or inadequate disclosures, Thorp offers no authority or analysis in support of his assertion that a voluntary contractual waiver of a claim violates the Open Courts Clause.[8] Accordingly, he has not met his burden of persuasion on this issue, and we thus see no reversible error on the part of the district court. *See* Utah R. App. P. 24(a)(8) ("The argument must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal.").

### III. Attorney Fees

¶36 Next, Thorp challenges the district court's award of attorney fees to Charlwood. First, he argues that the court lacked

---

8. Although Thorp is adamant that his purchase obligation was not "conditioned upon [his] *approval* of the content of the Seller's Disclosures," it does not follow that he would be precluded from contractual redress if one or more of those disclosures proved to be false within a timeframe amenable to litigation consistent with the governing statute of limitations.

jurisdiction to make the award. Second, he contends that Charlwood was not entitled to attorney fees under the REPC.

A. Jurisdiction

¶37   Thorp contends that the district court's silence on the issue of attorney fees in the Memorandum Decision was "not an oversight." Instead, he asserts that the court's statement that "no further Order is required" was the "Court's final decision declining to award Charlwood his attorney fees in this case" and constituted a "final appealable order." Thorp further characterizes Charlwood's request for attorney fees, made under rule 73 of the Utah Rules of Civil Procedure, as if it were a motion for reconsideration of the court's alleged earlier denial of attorney fees. And because Charlwood filed the rule 73 motion after Thorp had already filed a notice of appeal, Thorp asserts that the district court was divested of jurisdiction to reconsider the matter. At first blush, this argument appears meritorious, but closer consideration reveals its flaws.

¶38   "Generally, when a party files a timely notice of appeal, the court that issued the judgment loses jurisdiction over the matters on appeal." *Myers v. Utah Transit Auth.*, 2014 UT App 294, ¶ 15, 341 P.3d 935 (quotation simplified). *See Hi-Country Estates Homeowners Ass'n v. Foothills Water Co.*, 942 P.2d 305, 306 (Utah 1996) (per curiam) ("An appeal divests the trial court of jurisdiction and transfers it to the appellate court, where it remains until the trial court regains jurisdiction."). But "even where a trial court is otherwise divested of jurisdiction due to an appeal, the trial court retains the power to act on collateral matters." *Saunders v. Sharp*, 818 P.2d 574, 578 (Utah Ct. App. 1991). *See id.* ("Where any action by the trial court is not likely to modify a party's rights with respect to the issues raised on appeal, the trial court could act.") (quotation simplified).

¶39    But we need not decide whether the issue of attorney fees in this case constitutes a collateral matter because we disagree with Thorp's assertion that the Memorandum Decision included a denial of Charlwood's request for attorney fees and therefore was a final appealable order. Thorp's assertion that the court's silence on the issue of attorney fees was "not an oversight" but rather an intentional denial of attorney fees is belied by the court's own statement that it was granting Charlwood's motion to dismiss—which included a request for attorney fees—"in the entirety."[9] Based on this language, and without evidence to the contrary, the most reasonable interpretation of the court's silence is that the court inadvertently neglected to address the attorney fees request. Indeed, we cannot conceive of a reason for a court to remain silent on an issue that it directly considered and decided, electing instead merely to imply its ruling.

¶40    Because the court did not rule on the attorney fees request in the Memorandum Decision, it could not be a final appealable order. Rule 54 of the Utah Rules of Civil Procedure defines "Judgment" as "a decree or order that adjudicates all claims and the rights and liabilities of all parties or any other order from which an appeal of right lies." Utah R. Civ. P. 54(a). The rule further provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties, and may be changed at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." *Id.* R. 54(b). *See Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 34, 201 P.3d 966

---

9. Indeed, assuming the court was deliberately silent, as Thorp insists, the more reasonable interpretation in light of this language would be that the court *granted* the attorney fees request, as it was part of the motion the court "granted in the entirety."

("[A] decision is final when it ends the controversy between the parties."). Accordingly, regardless of the court's designation, the Memorandum Decision was not a final, appealable order because the court did not adjudicate "all claims and the rights and liabilities" of the parties when it neglected to address Charlwood's request for attorney fees. Utah R. Civ. P. 54(a).

¶41    With few exceptions, "an appellate court does not have jurisdiction to consider an appeal unless the appeal is taken from a final order or judgment that ends the controversy between the litigants." *Copper Hills Custom Homes, LLC v. Countrywide Bank, FSB*, 2018 UT 56, ¶ 10, 428 P.3d 1133 (quotation simplified). Accordingly, the issue of whether the attorney fees request was a collateral matter is irrelevant because, in the absence of a final judgment, jurisdiction over any aspect of the litigation never transferred from the district court to the appellate courts, despite Thorp's purported notice of appeal, until final judgment was entered. We therefore conclude that the district court had jurisdiction to award attorney fees to Charlwood.

B.    Attorney Fees under the REPC

¶42    "If the legal right to attorney fees is established by contract, Utah law clearly requires the court to apply the contractual attorney fee provision and to do so strictly in accordance with the contract's terms." *Express Recovery Services Inc. v. Olson*, 2017 UT App 71, ¶ 8, 397 P.3d 792 (quotation simplified).

¶43    The relevant provision of the REPC states, "In the event of litigation or binding arbitration to enforce this Contract, the prevailing party shall be entitled to costs and reasonable attorney fees." Here, the issue presented is whether Charlwood's invocation of the economic loss rule to defend against Thorp's tort claims was an action "to enforce" the REPC. Thorp argues that Charlwood's invocation of the economic loss rule "is

premised merely on the 'existence' of a contract and not the enforcement of any contractual obligation."

¶44 As discussed in section I above, Thorp's complaint relied heavily on Charlwood's alleged misrepresentations in the Seller's Disclosures. Indeed, Thorp pointed to several sections of the Seller's Disclosures and stated that "the above representations from the Seller's Disclosures were known or should have been known to Charlwood as being untrue, false, or materially inaccurate at the time he made them to Thorp" and that "Charlwood fraudulently concealed the above defects and negligence from the Construct[ion] Project by making the representations in the Seller's Disclosures." Thus, although Thorp ultimately brought causes of action sounding in tort, his complaint relied on specific provisions of the Seller's Disclosures (and the REPC, more generally) in bringing those claims.

¶45 Furthermore, by arguing that the economic loss rule barred Thorp's tort claims, Charlwood necessarily sought to enforce specific terms of the REPC. First, the very nature of Charlwood's argument involved establishing that a valid contract existed and that through application of the economic loss rule, the terms of that contract should be enforced to bar Thorp's non-contractual claims. Second, the economic loss rule required Charlwood to establish that the terms of the REPC overlapped with the alleged common law duties of disclosure that Thorp was alleging were violated. And in holding that the economic loss rule applies in this case, the district court concluded that "the alleged misrepresentations" on which Thorp's tort claims were based "are all governed by the REPC." Accordingly, we do not agree with Thorp's assertion that Charlwood did not seek to enforce the REPC.

¶46 This court addressed a similar situation in *Chase v. Scott*, 2001 UT App 404, 38 P.3d 1001. In that case, the plaintiff unsuccessfully sought to rescind a real estate purchase contract

and claimed negligent misrepresentation in the transaction; he did not bring an action for breach of contract. *Id.* ¶¶ 4–5. The district court awarded attorney fees to the defendant under an attorney fee provision in the contract that was identical to the one at issue here. *Id.* ¶ 5. On appeal, this court concluded that the "ensuing defense" against the plaintiff's action to rescind the contract "was litigation to enforce the Contract" because the defendant was required "to defend the legality and seek enforcement of the agreement," which "qualified as instituting legal action relating to the enforcement of the parties' rights under the agreement." *Id.* ¶¶ 15–17 (quotation simplified). Here, although Thorp did not seek to rescind the REPC, he attempted to circumvent the REPC by bringing tort claims. This necessarily required Charlwood to seek enforcement of the REPC by demonstrating that its terms governed the dispute between the parties.

¶47    For the foregoing reasons, we conclude that the court did not err in awarding attorney fees to Charlwood.[10]

---

10. Thorp also argues that the district court abused its discretion in awarding Charlwood 50% of the attorney fees incurred in bringing the motion to dismiss and 100% of the attorney fees incurred in bringing the rule 73 motion. But because Thorp has not included a transcript of the hearing addressing the issue of attorney fees in the record, it is unclear whether he objected to the court's calculation as arbitrary, and he has therefore not shown that he preserved a challenge to the court's calculation of attorney fees. *See State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 (stating that to preserve an issue, "the issue must be specifically raised by the party asserting error, in a timely manner, and must be supported by evidence and relevant legal authority") (quotation simplified). *See also* Utah R. App. P. 24(a)(5)(B)

(continued…)

### IV. Fees on Appeal

¶48 Charlwood seeks an award of attorney fees incurred on appeal. "When a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Telegraph Tower LLC v. Century Mortgage LLC*, 2016 UT App 102, ¶ 52, 376 P.3d 333 (quotation simplified). Accordingly, Charlwood is entitled to an award for attorney fees reasonably incurred on appeal, and we remand to the district court to calculate the amount of an appropriate award.

### CONCLUSION

¶49 The district court did not err in dismissing Thorp's complaint on the ground that the economic loss rule barred his claims. We also affirm the court's award of attorney fees to Charlwood and remand to the district court to calculate an appropriate award for Charlwood's attorney fees reasonably incurred on appeal.

¶50 Affirmed.

———————

(…continued)
(providing that the principal brief must include "citation to the record showing that the issue was preserved for review").